June Term,<br>1860.<br><br>GANSON et al.<br>v.<br>MADIGAN.

---

## GANSON et al. vs. MADIGAN.

```
13   67
77   69
13   67
88  655
13       67
52 LRA 249n
```

Where a vendor has actually taken all the steps necessary to vest the title to the goods sold in the vendee, he may sue for goods sold and delivered, and recover the contract price.

Where the vendor was ready and willing to perform the contract and offered to do so, but the vendee refused to accept the goods, and they were not set apart so as to vest the title in him, the vendor may still have his action on the contract for the damage actually sustained, which is ordinarily the difference between the value of the property at the time of the refusal and the price agreed upon.

An order given by the defendant to the plaintiffs for a reaper, to be warranted in certain respects, contained a clause to the effect that if, upon a fair trial the next harvest, it should not perform as warranted, it might be returned; and if, upon such trial, it should perform as warranted, it should be paid for: *Held*, that this clause did not bind the defendant to receive any reaper which might be furnished upon the order and test it in the harvest field, nor preclude him from showing by other proof that the reaper offered to him and refused was not such an one as he had ordered.

In an action upon such an order it appeared by the plaintiff's proof that when the defendant called for the reaper he was shown a large number which were all *alike*, one of which was designed for him, but no one was specially designated or set apart for him, and he refused to take one: *Held*, that it was competent for the defendant to show that one of the reapers so shown to him, and which had been taken by another person and tried, was not such an one as the order required.

APPEAL from the Circuit Court for *Dodge* County.

For a full statement of the contract on which this suit was

founded, and of the pleadings, see *Ganson et al. vs. Madigan,* 9 Wis., 146. *Madigan* signed an order in February, 1855, requesting *Ganson, Huntley & Co.* to manufacture and deliver to him at Milwaukee, to the care of Wells & Co., or of Dousman & Co., on or before the first of July following, one of Palmer & Williams' patent self-raking reapers, warranted to be capable, with one man and a good team, of cutting, raking, &c., from twelve to twenty acres of grain in a day, for which he agreed to pay, on delivery, $50, (besides freight, &c.), and on the 1st of December afterwards, $110. The order closed in these words: "If, upon a fair trial to be made next harvest, said reaper cannot perform as specified, the undersigned will store it safely and deliver it to *Ganson, Huntley & Co.*, or their agent, subject to refunding the $50 paid as above; and if the reaper can perform as above represented, the undersigned agrees, when called on, &c., to execute a note for $110, payable, &c." On the trial, the proof on the part of the plaintiffs was, that twenty or more reapers of the description mentioned in the order were manufactured by them and delivered at Dousman & Co.'s before the 1st of July, 1855; that they were shipped in pieces (each machine numbered), as it was hardly possible to ship them in any other way; that one of them was designed for defendant, and he was notified that it was at Dousman & Co.'s, ready for him; that no particular one of the reapers was left for him or selected for him, but that they were all *alike.* · The defendant testified: "I went to Dousman & Co. in July, 1855, and asked if they had a reaper for me; they said there was a reaper there for me, or for a man of my name; I asked them to show me a reaper with my name on it; they said there was no reaper there with my name to it; I asked them to show me my reaper; they said, there were the reapers, I might take my pick out of them; I said that they were four horse reapers, and I was to have a two horse reaper; I asked if they would show me one set up; they said it would be quite a job, and if I would not agree to take one they would not set it up; I told them I would take none of them, 1st, because my name was not on one of them; 2d, there was none set up for me; 3d, they were heavier than I wanted, or

thought my team could use. I did not offer the $50; they said if I would take one of them, they would pick one out for me, and load it on my wagon. * *. At the time I signed the order, I told the plaintiffs' agent that if one team of two horses, such as I owned, could not work the reaper, I did not want it, and he said mine would do it, one day with another, as set out in the order." This testimony, as to what was said by plaintiffs' agent, was objected to by the plaintiffs, but the objection was overruled. The defendant called as a witness one Lockwood, who testified that he got one of the reapers at Dousman & Co.'s on the 8th or 9th of July, 1855, and saw several others there. The defendant asked him, among other questions, the following: "Were the machines you saw there two-horse or four-horse reapers?" Objection by the plaintiffs overruled, and the witness answered that he thought they were four-horse machines. "Did it take four horses to run it (the reaper you got) successfully?" To this question the plaintiffs' counsel objected, "for the reason that the power necessary to run the *Madigan* machine could only be shown by actual trial of that identical machine, and that evidence as to the power necessary to operate the machine of the witness was incompetent," and the court sustained the objection.

The court charged the jury, at the request of the plaintiffs, as follows: "1. That the delivery of the reapers, as proved by the plaintiffs, was a good compliance on their part with the defendant's order, if the jury believe the testimony. 2. That the parties have stipulated as to how the capacity of the reaper shall be tested, and that its capacity to cut, rake off, and lay in gavels for binding, from 12 to 20 acres of grain in a day, can be tested in no way but by a fair trial in the harvest of 1855, without the consent of both parties. 3. That the term " a good team," as used by the defendant in his order on the plaintiffs, can only be determined by a trial of the reaper. That if the defendant's order contemplates the use of only a single span of horses to work the reaper, the defendant must first so work it in the harvest field, as he has agreed to do, with such a team, before he can

set up as a defense that it will require more than a span of horses to perform the conditions of the warranty."

The defendant requested the court to give the following instructions to the jury : " 1. That a delivery at Dousman & Co.'s, or Wells & Co.'s, Milwaukee, by plaintiffs, on or before July 1st, 1855, of twenty machines in detached pieces and parcels not designated, set up, or apart, would not be a compliance with defendant's order. 2. That until the performance by the plaintiffs, the order was unilateral, and plaintiffs were not bound thereby, and that in order to make this imperfect a perfect obligation, the plaintiffs should have manufactured and delivered for defendant, to Dousman & Co., or Wells & Co., by the 1st of July, 1855, a machine separated from others, and such as described in the order. 3. That plaintiffs must show that they delivered a machine for defendant which was manufactured by them after the date of the order ;" all of which instructions the court refused. The defendants also asked the court to charge : " That to entitle the plaintiffs to recover, the jury must find that the plaintiffs did, on or before the 1st of July, deliver to Dousman & Co., or Wells & Co., at Milwaukee, such a machine as is described in defendant's order, separated and set apart for him ;" which instruction the court refused to give in terms, but gave with the exception of the concluding words "separated and set apart for him." At the defendant's request the court instructed the jury: " 1. That to constitute a sufficient tender of the machine called for, it must at the time have been in such a situation, that to pass the title nothing was necessary but the offer on the one hand and the acceptance on the other, and payment of $50. 2. That if the machine did not answer the terms of the order, the defendant was not obliged to take it. 3. That if the jury believe from the testimony that the team referred to in the order means one good pair of horses, and that the reaper furnished at Dousman & Co.'s for the defendant, was a four horse machine, and required four horses to work it up to the warranty of 12 to 20 acres a day, the defendant was under no obligation to receive it." Verdict for the plaintiffs for the price of the reaper, and judgment on the verdict.

*Smith & Ordway*, for appellant:

1. To constitute a delivery of chattels, the articles sold must be ascertained, separated and set apart, so that possession can be taken on the part of the purchaser without any further act on the part of the seller, except in the case of such articles (as wine, oil, wheat, &c.,) as are incapable of identification. *Kimberly vs. Patchin*, 19 N. Y., 333 ; *Ward vs. Shaw*, 7 Wend., 404 ; *Downer vs. Thompson*, 2 Hill, 137 ; 1 Conn., 60, 325 ; 2 Parsons on Contracts, 160–1 ; 2 Kent's Comm., 496 ; *Veazy vs. Harmony*, 7 Greenl., 91 ; *Isherwood vs. Whitmore et al.*, 11 M. & W., 345 ; *Avery vs. Stewart*, 2 Conn., 69, 74. 2. The court erred in excluding evidence offered to show the power required by machines obtained from the same lot from which (as appeared by the plaintiffs' evidence) the defendant was required to select, and in charging the jury "that the capacity of the machine could be tested in no way but by a fair trial in the harvest of 1855," &c. The terms of the order did not require *Madigan* to take the machine, advance the money upon it and subject it to trial, if it was clearly not such a machine as he had ordered. The law does not compel that which is vain or impossible. Broome's Leg. Max., 182, 5 ; 2 Story's Eq. Jur., 736 ; 3 John., 596. Where a contract is executory, and the purpose for which the article is to be manufactured is known, there is an implied stipulation that it will answer that purpose. If this condition was not complied with, the defendant was not bound to receive the machine. *Chanter vs. Hopkins*, 4 M. & W., 399 ; *Howard vs. Hoey*, 23 Wend., 350 ; *Shepherd vs. Pybus*, 3 M. & Gr., 868 ; 12 M. & W., 63

*Conger & Hawes*, for respondents :

1. The defendant, by the terms of his order, made Dousman & Co. his agents to receive for him the reaper ; and they having received it without objection, the defendant is concluded by their acceptance. *Newcomb vs. Cramer*, 9 Barb. (S. C.), 402 ; *Comfort vs. Kiersted*, 26 id., 472 ; Story on Sales, § 315. The offer of Dousman & Co. to set it up or load it on the defendant's wagon, was a perfect delivery. *Stanton vs. Small*, 3 Sandford (S. C.), 230 ; *Kimberly vs. Patchin*, 19 N. Y., 330. 2. The offer to prove by Lock-

wood how much power was required to work his reaper, was properly rejected. The capacity of the defendant's reaper, by the terms of the contract, was to be determined by a trial in the harvest field of 1855.

November 19.      *By the Court*, PAINE, J. This case has once been before this court, and a judgment recovered by the defendant was reversed because the court below had instructed the jury that the plaintiffs could not recover without showing that one of the machines delivered to Dousman & Co. had been designated and set apart for the defendant, and marked with his name. Another trial was had, on which the plaintiffs recovered a judgment, and the defendant has appealed. While conceding that the former judgment was properly reversed, for the reason that the circuit court went too far in saying that the machine must actually be marked with the defendant's name, his counsel now insist that it was essential for the plaintiffs to show that one of the machines had been so set apart for the defendant, as to vest the title in him. We are satisfied that this would be necessary, before the plaintiffs could recover as for goods sold and delivered, but are still of the opinion that it is not necessary in order to maintain their action on the contract for the refusal of the defendant to perform it. The distinction between these two causes of action is well established, and the rule of damages in the one is very different from that in the other. Where the vendor has actually taken all the steps necessary to vest the title to the goods sold in the vendee, he may sue for goods sold and delivered, and the rule of damages would be the contract price. But where he is ready and willing to perform, and offers to do so, but the vendee refuses, even though the title is not vested in the vendee, the vendor still has his action on the contract for damages. But the rule of damages in such case would be the actual injury sustained, which is ordinarily the difference between the value of the property at the time of the refusal, and the price agreed on. Chitty on Con., 384; 1 Chitty's Pl., 347; 2 Parsons on Con., 484, note h; *Thompson vs. Alger*, 12 Met., 428; *Allen vs. Jarvis*, 20 Conn., 38; *Girard vs. Taggart*, 5 S. & R., 19.

When the case was formerly here, no question was made as to the rule of damages. The only question was, whether the plaintiffs could recover at all without showing that one of the machines was set apart for the defendant. We thought then that they could, and we still think that conclusion was correct, and the authorities cited by the appellant only go to show that the rule of damages, instead of being the contract price, might be the actual injury sustained by the vendors, if any.

It seems to have been assumed on both sides, that if the plaintiffs recovered at all, they must recover the contract price, as for goods sold and delivered. If this were so, we should agree with the appellant, that it would then be necessary for the plaintiffs to have shown one of the machines to have been so designated for the defendant, as to vest the title in him, and the jury should have been so instructed at his request. But the complaint is framed upon the contract. It avers the making of the contract, and the compliance with it on the part of the plaintiffs, by delivering the machine to Dousman & Co., and then avers that the defendant refused to pay or to perform the contract on his part. This seems clearly sufficient to enable the plaintiffs to maintain their action for damages for his refusal to perform. The court, therefore, properly refused the instructions asked by the appellant, which went to exclude the right of action altogether, unless the title to some particular machine had actually vested in the defendant. We could not, therefore, reverse the judgment for this refusal, even though satisfied that the defendant might have been entitled, if he had asked it, to an instruction upon the rule of damages, which would have materially changed the result.

But we think the judgment must be reversed for another reason. The court below instructed the jury at the request of the plaintiffs' counsel, that the defendant must first try the reaper with a team in the harvest field, before he could set up the defense that it would require more than a span of horses to make it perform according to the warranty. This instruction was undoubtedly based upon the last part of the defendant's order for the machine. He there says that "if

upon a fair trial to be made next harvest," the reaper could not perform as required, he would redeliver it to the plaintiffs, on refunding the $50 he was to pay on its delivery; and if it could perform as required, he would execute the note for the remaining $110. The court seems to have regarded this as amounting to a contract that the reaper should be tested in that way, and precluding the defendant from showing by any other proof, that it was not such a machine as he had ordered. But we think it ought not to be so construed. It seems to be rather the reservation of the right by the defendant to return the machine, after he had once received it as complying with his order, if upon trial he found it did not work as required. But the reservation of such a right ought not to compel him to receive it at all events in the first instance, and pay the $50, even though he could show that it was not such a machine as he had ordered. Suppose it to be established that the "team" mentioned in the order meant a single span of horses. If then the plaintiffs had furnished a reaper which a single span could scarcely draw at all, would the defendant have been bound to receive it and make the first payment, and draw it home and try it in the harvest field? It seems clear that he would not, and that he would only be compelled to resort to the trial provided for, in case he could not otherwise show the reaper not to be such an one as he had called for.

We think also that the court erred in excluding the testimony of Lockwood as to the power and capacity of his machine. It is true that ordinarily, where the question is as to the power of one machine, evidence as to the power of another would be inadmissible. But the circumstances of this case are peculiar. It will be remembered that the plaintiffs never specified any particular reaper for the defendant, but delivered a large number to Dousman & Co., one of which was designed for him. And when he came he was told he might take any one he chose. We held this to be a substantial compliance with the contract on the part of the plaintiffs, for the very reason that their witness testified that the reapers were all precisely alike, and manufactured from the same patterns. Now, when the plaintiffs rely on that evi-

dence to show performance on their part, it would seem to follow that the defendant might show that any of them was not such an one as he had ordered. And it appeared that the one which Lockwood was asked to testify about, was one of the same lot at Dousman & Co.'s with the one sent for the defendant. If therefore he could show that Lockwood's was not such an one as he had ordered, that would tend to show that none of them were, for the plaintiffs had shown that they were all alike. It would seem therefore ● that the evidence, upon the peculiar facts of this case, should have been admitted.

With these exceptions the rulings of the court below were correct. But for these errors the judgment must be reversed, with costs, and a new trial ordered.