JUDGE HARDIN
delivered tiie opinion of the court:
On the 2d day of September, 1854, the appellees, J. P. Jones and A. A. J. Jones, his wife, and the appellants, Williams and Davis, entered into a written contract, whereby Jones and wife leased to the appellants a boundary of land near the town of Ashland, to be used by the lessees mainly for the purpose of manufacturing fire-bricks by the use of clay, coal, and other materials, to be obtained from the lands of Jones and wife. Buildings and fixtures for fire-brick works were to be erected by the lessees, who were allowed the use of rock and timber necessary for that purpose free of charge, “provided none of said building materials” should be removed from the premises. They were also to have the privilege of obtaining on the lands of the lessors, and using, such quantity of stone-coal as might be necessary in said business; said Jones and wife agreeing, among other things, “ not to sell said clay nor lease the use thereof to others,” but to warrant said rights and privileges to the grantees, whose lease should continue for the term of ten years; provided, horvever, if said business should become unprofitable, the lessees might at any time terminate the lease by giving Jones and wife “ three months’ notice, removing their machinery therefrom, and surrendering possession thereof, without damage or waste.” .It was further stipulated, that “said parties of the second part are to dig and use in their business, on an average, at least six tons of fire-clay per day for the first year, and twelve tons per day thereafter, out of the clay from said lands, Sundays, and such bad days and frosty weather as are unsuitable for making firebrick, excepted. Said parties of the second part to *623 commence making fire-brick without unnecessary delay. And the said parties of the second part agree to pay said parties of the first part rent at the rate of twenty-five cents per ton for said fire-clay and potter’s clay, and one cent per bushel for said stone-coal.”
The appellants proceeded to improve the leased premises, erecting buildings, sinking a well, opening coal banks and roads thereto, and putting up their machinery, and, early in the year 1855, were manufacturing firebrick. After making about sixty thousand bricks they appear to have suspended their business, having found that it was proving unprofitable as early as July, 1855; and then, as the evidence conduces to show, notified Jones of their intention to quit the business and surrender their lease. And it further appears, that in or about October, 1855, they, by their agent, authorized Jones to take possession of the premises and sell or dispose of the same, which he agreed to do; and no work was done at the establishment afterwards by the appellants.
On the 16th day of June, 1856, the appellees brought this suit in equity, alleging, that although Davis & Williams only made brick for a short time in 1855, until their establishment ceased operations, they had continued to hold the leased premises and the privileges granted by the lease, and failed to render an account of materials used, or to pay rent; that they could have worked and carried on their business in 1855 two hundred and fifty days; and in 1856, up to the bringing of the suit, one hundred and twenty-five days; and that they would have used in manufacturing brick about fifty bushels of stone-coal to every six tons of clay, and therefore claimed that the defendants were indebted to *624 them under said contract in the sum of $1,000, made up as follows:
250 days in 1855, six tons of clay per day, at 25c. per ton, ----- $375 00
Coal at fifty bushels per day — 250 days— 12,500 bushels, at 1c. per bushel, - - 125 00
125 days in 1856, at 12 tons clay per day, - 375 00
125 days, 12,500 bushels (coal), at lc. per bushel, ------- 125 00
$1,000 00
Thus presenting their claim for $1,000, the plaintiffs obtained an attachment, which they caused to be levied on a steam engine and boiler, and other property of the defendants, which remained on the leased premises, and which was subsequently sold, under an order of the court, for the sum of $110.
James T. Davis, one of the defendants, filed an answer, setting forth that himself and Williams, after the execution of the lease, proceeded, with all reasonable dispatch, and at an expense of about three thousand dollars, to erect on the premises, with necessary machinery, buildings, and implements, an establishment for the manufacture of fire-brick; that they sunk a well, opened coal mines, erected a large kiln, and put the establishment in complete operation by the first of April, 1855, and continued it in operation until about the first of October, 1855, when they became satisfied the business was unprofitable, and determined to put an end to the lease, and so notified the plaintiffs; and it was therefore agreed between them and said Jones, that, from that time forth, said business would cease, and said Jones would lease or dispose of the premises as he might deem proper; and that it was further agreed that he should sell and dispose *625 of the machinery and property of the defendants on the premises, and account for the proceeds; but in case no fair and reasonable sale of the same could be effected, the defendants were to have the privilege of leaving them on the premises until a disposal thereof could be made-, or until the plaintiffs should lease the premises to some other person.
The answer alleges that the cost and value of the permanent fixtures erected by defendants was two thousand five hundred and thirty-eight dollars and forty-four cents, and that the material used and to be accounted for by them under the contract was as follows:
309 tons of clay, ------ $77 25
4,577-J- bushels of coal, ----- 45 77£
$123 02i
The answer also charges, in effect, that the plaintiffs are liable to account for over four hundred and fifty dollars for brick, clay, and coal left on the premises by the defendants, and that from and after the first of October, 1855, the plaintiffs used the premises, and from that time the lease was terminated. The answer denies that there were more than one hundred and seventy working days from the time the establishment was put in operation till the termination of the lease, and insists that defendants should not account for more than said sum of one hundred . and twenty-three dollars and two and one fourth cents.
In a separate paragraph the defendant, Davis, sets up, by way of set-off against Jones and wife, an account of three hundred and ninety-seven dollars and sixty-four cents for goods and money furnished and advanced.
The plaintiffs filed a “ reply to the defendants’ set-off,” in which a portion of the account of Davis is denied, *626 and it is alleged, as a defense to the whole of it, so far as justly charged, that defendants were indebted to the plaintiff, Jones, fo.r work and labor of his hands, and teams and otherwise, upon an account, in the sum of five hundred and thirteen dollars and forty cents, and that said account of Davis, so far as just, was furnished and paid to said Jones in payment of his said account.
After a second report of a commissioner, which was excepted to by both parties, the circuit court, on a final hearing of the cause, and of a motion of the defendants to quash the sale of the attached property, adjudged, as to the account of the defendant, Davis, of three hundred and ninety-seven dollars and thirty-seven cents, and that of the plaintiff of three hundred and thirteen dollars and forty cents, that both were sustained and should be allowed ; and that the plaintiffs were entitled to recover as for rent, under the contract, up to the bringing of the Suit, and on the basis assumed by them, their claim of one thousand dollars, of which it was found, after deducting the sum of one hundred and ten dollars, for which the attached property was sold, and the sum which the defendants’ said account exceeded that of the plaintiffs, there remained a balance of eight hundred and six dollars and three cents; and as this sum, with interest to the date of the judgment, was found to exceed one thousand dollars, the sum claimed in the petition, the court rendered judgment for the plaintiffs for said sum of one thousand dollars. And it was further adjudged that the defendants’ motion to quash the sale of the attached property be overruled.
It is insisted for the appellants, that, for several reasons, the judgment is erroneous, and should be reversed.
1. It is contended that the court erred, both in its conclusion that the lease continued in force after the 1st of *627 October, 1855, and in the basis assumed for estimating the appellants’ liability for clay and coal under the contract.
As to the time at which the lease was in fact terminated, we cannot concur in the conclusion of the circuit court. Although, as suggested in the judgment, the contract required that the appellants should, in order to terminate the lease, give notice to the appellees of their intention to do so, and also remove their machinery, and surrender the possession to the lessors, wm think it sufficiently appears that the appellee, Jones, waived the right to require a literal compliance with the contract in that respect by resuming control of the premises, and consenting to the abandonment of the business by the appellants about the 1st of October, 1855, and the court should have treated the lease as terminated at that time.
We are also of the opinion that the basis on which the appellants liability for clay and coal, or rather the damage sustained by the appellees was estimated, was incorrect. The true measure of damage for the failure to receive and pay for property contracted for is not the contract price, but it is the difference between the contract price and the actual value of the property when it should have been received under the contract.
2. The appellants insist that they should have been allowed compensation for the improvements made, at least in sinking the well, and making roads to and opening the coal banks. According to our construction of the contract, it does not seem to have been contemplated by the parties that the appellees should in any event account for these improvements, and we do not perceive that the court erred in disallowing the claim.
3. It is also insisted, that under the pleadings and proof, the account exhibited with the plaintiffs’ reply should not *628 have been allowed to extinguish or discharge so much of the debt pleaded as a set-off by the appellant, Davis; but although the account is not and could not have been pleaded in the reply as a set-off, because, as suggested, a reply is restricted by the Civil Code, section 133, to statements constituting a defense to the set-off or counterclaim of the defendant, it was proper to suggest in the reply, as a defense to the set-off of Davis, that the goods for which he claims, were sold and delivered in payment of the appellees’ account; and we think the facts proven authorized the presumption that such was the case.
4. It is objected that the court erred in overruling the motion to quash the sale. It sufficiently appears that the attached property, mainly consisting of a steam engine and boiler, was advertised by the commissioner to be sold on the 17th day of March, 1857, at the hour of one o’clock, P. M., and that the- sale was made before the specified time; and that the sum of one hundred and ten dollars, for which the property was sold, was less than one fourth of its real value. It moreover appears, from the testimony of Vinton and D. T. Davis, that they each attended, at or ne'ar the appointed time, to bid for the property, and were prevented from doing so, and from causing the property to bring its value, by the action of the commissioner in proceeding too hastily to make the sale. Under all the circumstances, we are of the opinion that the court erred in overruling the motion to quash the sale, and that the same should have been set aside.
Wherefore, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.