BEARD v. SLOAN.

PARTIES.—*Agent.*—*Contract.*—An agent who contracts in his own name, instead of that of his principal, may sue in his own name for damages on a breach of the contract.

MEASURE OF DAMAGES.—*Contract.*—The measure of damages on a breach of contract to deliver goods is the difference between the contract price and the price when and where they were to be delivered.

Beard *v.* Sloan.

INSTRUCTIONS.—*Error.*—The refusal to give an instruction as to the law applicable to a supposed state of facts, at the request of a party, is a harmless error, where the jury find specially a different state of facts.

SAME.—It is no error for the court to refuse to give an instruction asked by a party, when the instructions given by the court are to the same effect.

APPEAL from the Johnson Common Pleas.

PETTIT, J.—Appellee süed the appellant on a verbal contract for the sale and delivery of corn. The complaint was in two paragraphs. The first paragraph was for the sale and delivery of fifteen hundred bushels of corn at a place named, between the 7th and 12th days of September, 1867, at eighty cents per bushel, with proper averments of part payment and readiness to receive it and pay the balance of the purchase-money; that the corn was not delivered; and that it was worth, at the time it should have been delivered, ninety cents a bushel.

The second paragraph was the same as the first, except that it put the amount of the corn at one thousand bushels. Judgment for five hundred dollars was demanded as damages.

The answer was in five paragraphs; the first, general denial.

The second paragraph admits the making of the contract as alleged, but says that plaintiff contracted as agent of the firm of Gibson & McConnell; and that before the commencement of this action, the defendant fully performed his contract with them.

The third paragraph admits the making of the contract, as alleged, but says that before making the contract the plaintiff had been the agent of Gibson & McConnell, and had been specially authorized by them to purchase defendant's corn; that by his acts and declarations he induced them to believe that he, at the time of making the contract, was still acting as such agent, fraudulently intending thereby to cheat them out of the profits; and that as soon as de-

fendant discovered plaintiff's fraud, he tendered the money back, advanced to him, and offered to rescind.

The fourth paragraph is substantially the same as the third, with the addition that the contract made with the plaintiff was afterward modified by said Gibson & McConnell, and as modified was fully performed.

The fifth paragraph admits the making of the contract as alleged, but says that at the time of making it, plaintiff falsely represented to defendant that he was contracting as the agent of Gibson & McConnell; and that the defendant was thereby induced to make the contract, supposing that he was in fact contracting with Gibson & McConnell.

It also alleges a tender and offer to rescind, as in the third paragraph.

To the second, third, fourth, and fifth paragraphs, there was a reply of general denial. Trial by jury, and verdict for plaintiff for one hundred and twelve dollars and fifty cents, and the following questions and answers thereto, which questions were submitted to the jury by the court at the instance of the defendant.

1. Was the plaintiff able, ready, and willing to pay for the corn contracted of the defendant, upon delivery of the same at the time agreed upon? Answer. Yes.

2. Was plaintiff, shortly previous to his purchase of the defendant's corn, in the employ of the firm of Gibson & McConnell, as their agent for the purchase of corn? Answer. No.

3. Was plaintiff specially authorized by said firm to buy defendant's corn? Answer. No, not at the time of the purchase.

4. When did plaintiff's agency for said firm terminate? Answer. If any agency ever existed, it terminated about the fifth day of September.

5. How was it terminated? Answer. By refusing to act.

6. What, if any, notice did the plaintiff give said firm that he would no longer act as their agent?

7. If such notice was given, state when it was given, and

Beard *v.* Sloan.

how long before or after plaintiff had purchased the corn? Answer. If any agency ever existed, it never came before the jury.

8. When did plaintiff first commence negotiating with defendant for the purchase of the corn? Answer. First to fifth of September.

9. When was the contract finally closed? Answer. Sixth.

10. Did defendant fulfil the contract subsequently made with said firm of Gibson & McConnell, for the sale and purchase of his corn? Answer. He did.

11. What was the highest market price of good, marketable corn in the ear, delivered in the cars at Needham Station, Johnson county, from and including the sixth day of September, 1867? Answer. Ninety cents.

12. How many bushels of corn did Beard have at the time of making the contract with Sloan? Answer. Do not know.

13. Did Beard, at the time of making said contract, have all the corn that he afterward delivered to Gibson & McConnell? Answer. Do not know.

14. Was Sloan, at the time of making the contract sued on, employed by Gibson & McConnell to purchase Beard's corn? Answer. Was not.

A motion for a new trial, for the following causes, was made:

First, because of error in the amount of recovery, in this, that the amount assessed is too large.

Second, because the verdict herein is not sustained by sufficient evidence.

Third, because said verdict is contrary to law.

Fourth, because of error of law occurring at the trial of said cause, and at the time excepted to by defendant, in this, first, that the court erred in refusing to give to the jury so much of the seventh instruction asked by the defendant as is in the words following: "and whether they did or not, Sloan would in such case have no right to recover on the contract made by him;" second, that the court erred in re-

fusing to give to the jury the eighth instruction asked by the defendant; third, that the court erred in giving to the jury the second and sixth instructions, given on its own motion.

Motion for new trial overruled, and exception taken, and judgment on the verdict.

The only error assigned is the overruling the motion for a new trial. We need not notice this assignment of error, so far as it relates to the verdict, or the first, second, and third 'causes for a new trial, further than to say that the evidence, though somewhat conflicting, justifies the verdict, and we cannot, under the many rulings of this court, disturb it on account of the evidence; besides, the jury ·have answered special questions of fact covering every material question or point in the case, and many immaterial ones, which clearly show the right of the plaintiff to recover.

The only remaining question arises on the assignment of error, so far as it relates to the cause for a new trial, for giving and refusing to give instructions. The instructions refused and given are as follows:

"The defendant requests the court to charge the jury as follows:

"First. When personal property, as corn, is sold, and no credit is given, the seller is not bound to deliver the property unless the buyer is able, ready, and willing to pay the price.

"Second. Subject to the rights of his agent, an employer may at any time rescind, modify, or discharge a contract made for his benefit by said agent with a third person, and may substitute for the original contract a new and different one.

"Third. An agent is bound to act with the utmost good faith toward his employers. He is not permitted to use his agency to speculate upon for his own advantage. If, in fraud of his trust, he buys for himself what he was employed to buy for his employers, the latter are entitled to treat the contract as if made for their benefit, and may adopt, rescind,

modify, or discharge it, or make a new contract in reference to the subject-matter, as they may see fit.

"Fourth. An agent cannot renounce his agency, when his employers regard it as continuing, without giving them due notice of his intention so to do, where it is possible for him to give such notice.

"Fifth. Nor can an agent, who, in the course of his agency, has discovered an opportunity of making an advantageous contract for his employer, fraudulently renounce his agency on purpose to make such contract for himself; if he does so, he forfeits all his own rights in the contract, and his employers may treat it as if it had been made expressly in their *behalf.*

"Sixth. If you find that the plaintiff Sloan made the contract sued on in the name of, and as agent for, Gibson & McConnell, then you should find for defendant.

"Seventh. Although Sloan may have made the contract in his own name, yet if in fact he was at the time employed by Gibson & McConnell to purchase corn for them, and in violation of his agency he attempted to purchase for himself, that constitutes what is called constructive fraud, no matter how innocent Sloan's intentions may have been; in such case, all the benefits of the contract belonged to Gibson & McConnell, the same as if it had been expressly made in their name. They had, in such case, a right to adopt, modify, or reject Sloan's contract, or make a new one for the purchase of defendant's corn (and whether they did or not, Sloan would, in such case, have no right to recover on the contract made by him).

"So much of the foregoing instruction as is included in parenthesis was refused and at the time excepted to by the defendant.

"Eighth. The burden is upon the plaintiff to show, by preponderance of the evidence, that the market price of good, merchantable corn, delivered in the car at Needham Station, at some time between the 6th and 12th days, inclusive, of September, 1867, was over eighty cents per bushel;

if he has failed to prove this, you must find for defendant.

"Refused and at the time excepted to by the defendant."

Thereupon, the court, upon its own motion, gave to the jury the following instructions, to wit:

"First. The plaintiff sues the defendant for the breach of a contract for the sale of a lot of corn, which it is alleged the plaintiff purchased of the defendant, and which the defendant failed to deliver.

"Second. The damages on such a contract is the difference in the contract price and the value of the corn at the time of delivery; hence, if the corn is not proven to have been worth more at the time of delivery than the contract price, then there are no damages in the case, beyond a merely nominal sum, for the breach of the contract. Given and at the time excepted to by defendant.

"Third. The price of the corn at the time of the delivery is to be ascertained by proof of its market value at the time and place.

"Fourth. If the contract in this case was made by Sloan as the agent of Gibson & McConnell, the plaintiff has no right of action, and you should find for the defendant.

"Fifth. If Sloan was the agent of Gibson & McConnell to purchase the corn in question, and for the purpose of taking the benefits of the transaction, or for any other purpose, concealed his agency and bought it in his own name, then the purchase would enure to the benefit of Gibson & McConnell; and if they, before the delivery, changed, modified, or discharged the contract with Beard, Sloan could have no right to complain, and would have no right of action in the case.

"Sixth. If Sloan made a contract with defendant in his own name, and on his own account, Beard would be bound to observe its terms, although Sloan may have been the agent of Gibson & McConnell for the purchase of the corn. The injury resulting to Gibson & McConnell in such a transaction would be a question to be settled between Sloan and

Gibson & McConnell, with which Beard could have nothing to do. Given and excepted to at the time by defendant.

"Seventh. If Sloan was the agent of Gibson & McConnell to purchase the corn of Beard, and in fraud of the right of his principals he made the purchase in his own name, and on his own account, and afterward, before the corn was delivered to Sloan, Gibson & McConnell made such arrangements as that the corn was delivered to them and not to Sloan, such a failure of delivery to Sloan would give him no right of action against Beard.

"Eighth. In determining all the questions in this case you are to take the preponderance of the evidence.

"Ninth. Upon the question of the making and breach of the contract, the burden of proof is on the plaintiff, to be sustained by the preponderance of the evidence; and on the question of the agency of Sloan, the burden is on the defendant, to be proven by a like preponderance."

It is objected that the court erred in refusing to give to the jury the latter clause of the seventh instruction asked by the defendant, which is this: "and whether they did or not, Sloan would in such case have no right to recover on the contract made by him." This instruction goes upon the theory that an agent of others, who makes a contract in his own name, instead of his principal's name, while his agency continues, cannot maintain an action on it. We are cited to Justinian's Institutes and The Code Napoleon. We have not, in this case, examined these works, but we admit that they may have been good authority in France and Rome, where the civil law did and does yet prevail, but they cannot control the positive statute of Indiana, and the decisions of its highest court, nor where Story on Contracts and Story on Agency are received as authority. See 2 G. & H. 37, sec. 4; *Sharp* v. *Jones*, 18 Ind. 314; Story Contracts, 253, sec. 186; Story Agency, 479, sec. 396, *et seq*. But, independent of these authorities, whether right or wrong, the jury found that Sloan was not an agent at the time the contract was made.

It is objected that the court refused to give the eighth instruction asked by the defendant. If the rejection of this asked for instruction was wrong in itself, no wrong was done to the defendant, for the whole ground was covered by the second instruction given on its own motion. But the jury, in their answer to the eleventh question put to them, puts this question at rest by answering that the corn was worth more at the time and place when and where it was to be delivered than the contract price; and, consequently, no harm could have been done to the appellant by refusing to give the instruction, even if it was right as a general rule.

It is objected that the court erred in giving the second and sixth instructions on its own motion. We have already disposed of and approved the giving of the second instruction; and the sixth instruction is fully warranted by the authorities cited as to the objection to giving the last clause of the seventh instruction asked by the defendant.

We have been compelled to examine and write this case at great length, not because there are any merits in the appeal, but because the questions made are before us under the constitution of the State, article 7, section 5.

We can see and know, by the record, that no wrong has been done to the appellant by the action of the court from which this case was appealed; and we feel it to be our duty to affirm the judgment, with the highest penalty the law allows.

The judgment is affirmed, at the costs of the appellant, with ten per cent. damages.

*S. P. Oyler* and *D. Howe*, for appellant.

*D. D. Banta* and *C. Byfield*, for appellee.