## THE PITTSBURGH, CINCINNATI, AND ST. LOUIS RAILWAY CO. v. HECK.

CONTRACT.—*Refusal to Accept Property Contracted for.*—*Measure of Damages.*— An action against a railroad company, based upon a contract under which the plaintiff has placed upon the line of the defendant's road a quantity of firewood, which, by the contract, the defendant was to measure, receive, and pay for at a certain price per cord, of which placing of the wood the defendant has been notified by the plaintiff, but as to a portion thereof has not measured, received, or paid therefor as agreed upon, which portion,

having been insured by the plaintiff as his own after it should have been so accepted, has been destroyed by fire without the plaintiff's fault, is not an action for the contract price of the wood, but is an action for not accepting the wood according to the contract; and the measure of damages is the difference between the contract price and the market price at the time and place at which the wood ought to have been accepted.

From the Howard Circuit Court.

*N. O. Ross*, for appellant.

*O. B. Sausum*, for appellee.

WORDEN, J.—This was an action by the appellee against the appellant, upon contract. The complaint was in two paragraphs, not materially unlike. It alleged, in substance, that an agreement was entered into between the plaintiff and the defendant, by which the plaintiff was to furnish, cut, haul, and pile along the line of the defendant's railroad a quantity of firewood, which the defendant was to measure, receive, and pay the plaintiff for, at a specified rate per cord; that, in pursuance of the contract, the plaintiff did furnish, cut, haul, and pile along the line of the defendant's road a large quantity of firewood as stipulated for, of which the defendant had notice; that the defendant measured, received, and paid for some portions of the wood, but as to other portions thereof, viz., seven thousand six hundred and sixty-seven cords thereof, the defendant refused to measure, receive, and pay for the same according to the agreement, though the plaintiff often requested the defendant to measure, receive, and pay therefor; that while the defendant thus failed and refused to measure, receive, and pay for the last-mentioned wood, a large part thereof, viz., thirty-one hundred and fifty-three cords thereof, were, on, etc., without the fault or negligence of the plaintiff, destroyed by fire, to the damage of the plaintiff, etc.

Issues were made up, and the cause was tried by a jury, resulting in a verdict and judgment for the plaintiff for seven thousand four hundred dollars.

The main question in the cause arises upon the refusal of the court to give the following charge asked by the defendant, viz.:

The Pittsburgh, etc., R. W. Co. *v.* Heck.

"Under the contract sued on in the first and second paragraphs in the complaint, the wood by the plaintiff cut, hauled, and piled up along the line of the defendant's railroad was not the property of the defendant until measured and received by the defendant, and if you find that it was destroyed by fire before it was received, the loss was the plaintiff's and not the defendant's."

There are no facts averred in the complaint that made the wood the property of the defendant at the time it was burnt. Nor does it appear in evidence that the plaintiff, at any time before it was burnt, did anything showing that he regarded the wood as the property of the defendant, or at her risk. On the contrary, he insured it as his own after it should have been received by the defendant in accordance with the alleged contract. The cause was tried, and the verdict evidently found, upon the theory that the measure of damages was the contract price of the wood. If this was legally correct, the charge ought not to have been given, because the loss in such case would be the loss of the defendant and not the plaintiff. But if the true measure of damages in such case is the difference between the contract price and the market value of the wood at the time and place when and where it should have been accepted by the defendant, the charge should have been given, because, in such case, the loss would be that of the plaintiff. Mr. Chitty lays down the rule in the following terms:

"In an action for not accepting goods, the measure of damages is the difference between the contract price and the market price, on the day when the vendee ought to have accepted the goods." Chitty Con. 1331, 11 Am. ed.

This rule is sustained by a large number of cases, among which are the following: *Williams* v. *Jones,* 1 Bush, 621; *Haskell* v. *McHenry,* 4 Cal. 411; *Allen* v. *Jarvis,* 20 Conn. 38; *Northrup* v. *Cook,* 39 Mo. 208; *Gatling* v. *Newell,* 12 Ind. 118, 125; *Beard* v. *Sloan,* 38 Ind. 128; *Ganson* v. *Madigan,* 13 Wis. 67; *Gordon* v. *Norris,* 49 N. H. 376.

In the case last cited, the distinction is pointed out between

contracts for the sale of goods then in existence, and agreements to furnish materials and manufacture articles in a particular way and according to order, in respect to the statute of frauds and otherwise. The rule of damages is the same in contracts for the sale of real estate. *Old Colony Railroad Corporation* v. *Evans,* 6 Gray, 25 ; *Griswold* v. *Sabin,* 51 N. H. 167 ; *Porter* v. *Travis,* 40 Ind. 556.

It is conceived that in all cases of contracts for the sale of personal property, where it has any market value, the vendor, before he can recover of the vendee the contract price, must have delivered the property to the vendee, or have done such acts as vested the title in the vendee, or would have vested the title in him, if he had consented to accept it; for the law will not tolerate the palpable injustice of permitting the vendor to hold the property and also to recover the price of it.

In the case of *Bement* v. *Smith,* 15 Wend. 493, which has been cited by counsel for the appellee, the defendant had employed the plaintiff to make a sulky. The plaintiff made the sulky and took it to the residence of the defendant, and told him that he delivered it to him, and demanded payment in pursuance of the terms of the contract. The defendant denied having agreed to receive it. The plaintiff told him that he would leave the sulky with a person in the neighborhood, naming him, which he did, and commenced suit. It was held that the plaintiff had performed his part of the contract, and was entitled to recover the contract price for the sulky. The case went upon the theory that there had been a delivery of the property to the defendant, as is shown in the case of *Gordon* v. *Norris, supra.*

So, in the case of *Ballentine* v. *Robinson,* 46 Penn. St. 177, the plaintiff agreed to build an engine according to directions of defendant, and furnish the necessary materials for it. The plaintiff was held to be entitled to the contract price, the court holding that, upon the facts shown, the title to the property had vested in the defendant.

In the case of *Girard* v. *Taggart,* 5 S. & R. 19, 33, GIBSON, J., in delivering his opinion, said:

"The damages recovered are not the price of the goods sold, but a compensation for the disaffirmance of the contract; and the difference on the resale is merely the measure of the damages actually suffered. Properly speaking, the seller cannot recover the price, where he has retained the goods in consequence of the buyer's refusal to comply with any part of the contract," etc.

In *Ganson* v. *Madigan, supra,* the court held, that "where the vendor has actually taken all the steps necessary to vest the title to the goods sold in the vendee, he may sue for goods sold and delivered, and the rule of damages would be the contract price. But where he is ready and willing to perform, and offers to do so, but the vendee refuses, even though the title is not vested in the vendee, the vendor still has his action on the contract for damages. But the rule of damages in such case would be the actual injury sustained, which is ordinarily the difference between the value of the property at the time of the refusal, and the price agreed on."

As the property had not passed from the vendor, the plaintiff, at the time it was destroyed, he must bear the loss. The destruction of the property was not caused by, nor was it the consequence of, the breach by the defendant of her contract. The case of *McConihe* v *The New York and Erie R. R. Co.,* 20 N. Y. 495, is in every way in point here. There, one Mallory, who had assigned his claim to the plaintiff, had agreed with the defendant to furnish materials and build certain cars for the defendant, and the defendant was to furnish the iron boxes therefor. Mallory set up some of the cars and had the work ready to set up the others, and those set up were completed as far as it was possible without the boxes, which the company neglected to furnish. He expended over two thousand dollars in the work and materials, and was prevented from completing the contract by the failure of the defendant to furnish the boxes, as she had agreed, though Mallory frequently urged her to furnish them. While matters were in this condition, all the cars and materials, except the iron, were con-

sumed by fire, without any carelessness on the part of Mallory. The court said:

"Mallory agreed to build for the defendant fifteen lumber cars, from materials to be furnished by him, except the boxes which the defendant agreed to furnish, and the expense of which was to be deducted from the price of the cars. This was in effect an agreement for the sale of the cars, thereafter to be constructed by Mallory, to the defendant, and did not vest any property in the defendant until the cars were completed and delivered. (*Andrews* v. *Durant*, 1 Kern. 35.) In that case the authorities are cited and very ably reviewed, and it is unnecessary again to examine them upon this proposition. It then follows that the cars set up, and materials for those not set up, were the property of Mallory at the time of their destruction by the fire. The rule is that the party in whom the title to the property is vested must bear the loss in case of destruction by accident."

In *Dustan* v. *McAndrew*, 44 N. Y. 72, 78, it is held, that "the vendor of personal property in a suit against the vendee for not taking and paying for the property, has the choice ordinarily of either one of three methods to indemnify himself. 1. He may store or retain the property for the vendee, and sue him for the entire purchase price. 2. He may sell the property, acting as the agent for this purpose of the vendee, and recover the difference between the contract price and the price obtained on such resale; or, 3. He may keep the property as his own, and recover the difference between the market price at the time and place of delivery, and the contract price."

The latter is the method adopted by the plaintiff in this case. He kept the wood as his own. After it should have been received by the defendant, he insured it in his own name and for his own benefit, clearly evincing an election to regard it as his own, and not the property of the defendant. He must, therefore, accept the rule of damages applicable to such case.

The court below, in our opinion, erred in refusing to give the charge asked.

Our attention has been called to the case of *Chamberlain* v. *Farr*, 23 Vt. 265. There was a sale of some straw, a part of which only the purchaser took away, and the residue the vendor threw into his barnyard, and the next spring to his cattle, it having become damaged. It was held that the purchaser was liable for the price of the straw sold, less the value of that part not taken for the purpose to which it was applied. But the case is not at all in point here, because the court held that, under the facts shown, the title to the whole of the straw vested in the purchaser.

The case of *Martineau* v. *Kitching*, L. R. 7 Q. B. 436, is not in point on the question we have been considering. There, the plaintiff had sold to the defendant certain sugars, a part of which had not been taken away, when they were destroyed by fire. It was held that the loss fell upon the purchaser. A part of the court held this, upon the ground that upon the facts the title to the sugars had vested in the purchaser, and the residue of the court, upon the ground that by the terms of the contract the undelivered sugars were to be at the risk of the purchaser.

The judgment below is reversed, with costs, and the cause remanded for a new trial.