Filed March 8, 1884.

---

No. 11,067.

## DWIGGINS v. CLARK.

CONTRACT.—*Sale.*—*Delivery.*— *Tender.*—*Measure of Damages.*—*Pleading.*—A. contracted in writing with B. for the purchase of a monument, to be manufactured and put up at a future time, at a fixed price, payable on delivery. B. fulfilled the contract so far as A. would permit, but A. refused to allow him to do so; he was ready fully to comply, and so notified A.,

but the latter would not receive the monument or permit B. to put it. up; and A. refused to comply with his agreement.

*Held*, that the complaint alleging these facts was good on demurrer.

*Held*, also, that the measure of damages, under the facts alleged, could only be the difference between the contract price and the market price at the time and place fixed for delivery; inasmuch as no delivery or tender was alleged, and no proof of facts not alleged could authorize greater damages.

PLEADING.—*Abatement.*—*Practice.*—Under R. S. 1881, section 365, if an answer in abatement be filed with paragraphs in bar, it may be stricken out, but sustaining a demurrer to it is not available error.

From the Montgomery Circuit Court.

*H. M. Billings, W. S. Moffitt, G. W. Paul, M. D. White* and *J. E. Humphries,* for appellant.

*E. C. Snyder* and *J. McCabe,* for appellee.

BLACK, C.—The appellee sued the appellant upon a written contract as follows:

"Milton Clark, Crawfordsville, Ind., agent for the White Bronze Monuments, manufactured at Bridgeport, Conn. June 24th, 1881. Wayne township, Montgomery county, Ind. Order and agreement for double front white bronze monument, No. 155, to be delivered at Waynetown in August, 1881, or as soon as convenient after it arrives here.

" I hereby agree, for value received, to pay Milton Clark or bearer four hundred and fifty dollars on delivery of one No. 155 white bronze monument, in accordance with the description of said No. 155 as per illustrated price list or photograph of said monument, the inscription or mottoes to be in raised letters as written on the back hereof, with such extensions or abbreviations as may be customary. If delivered according to this contract the purchaser further agrees that, in default of payment, it is specified in this contract said Milton Clark shall have the privilege of entering upon the grounds and removing the said monument without the consent of said ———. Witness my hand this 24th day of June, 1881." Signed by Mary Dwiggins.

On the back of this instrument were written the words,

" crown on top," and certain other words indicating devices and inscriptions.

It was alleged in the complaint that by direction of the defendant, by herself and through her agents after said contract had been executed, and by an understanding between the plaintiff and the defendant at the time of said execution that the mottoes and inscriptions should be sent to the plaintiff; he caused to be placed upon said monument certain mottoes and inscriptions, set out; that by request of the defendant the crown on the top of said monument mentioned in the endorsement on said contract was left off said monument; and a copy of directions in writing in regard to leaving off said crown and to the placing of said mottoes and inscriptions on the monument was set out.

It was alleged that the plaintiff, upon receiving said monument, notified the defendant and informed her that he was ready " to put it up in accordance with the terms of said agreement; " that she refused to receive it and to permit him to put it up; that he " has complied with all the terms and conditions of said contract on his part except in so far as he has been prohibited from so doing by the acts of the defendant and her agents, and that he is ready and willing in all respects to comply with the conditions of his said agreement; that plaintiff has demanded permission of the defendant and her agents to complete his part of the agreement, but has been and is now refused such permission ; that defendant has wholly failed to comply with the terms of said agreement on her part, to plaintiff's damage $500. Wherefore," etc.

A demurrer to the complaint for want of sufficient facts was overruled, and this ruling is assigned as error.

The contract in suit was an executory contract for the sale of a chattel, no specific article in existence and ready for delivery being contemplated, but the contract being capable of performance by delivery of an article of a particular kind, which was yet to be wholly manufactured or to be selected and appropriated to this purpose, and to be in part manufactured.

Dwiggins *v.* Clark.

The stipulated price was four hundred and fifty dollars, which was to cover the mottoes and inscriptions and certain devices to be placed upon the monument.   The contract was changed so as to provide that the crown originally agreed upon for the top of the monument should be left off.   Whether it was agreed that this was to make any difference in the price is not stated, it being merely shown that the crown was left off by request of the defendant.

In actions by the vendor based upon such contracts as this, the measure of damages arising out of the state of facts shown by the complaint, and, therefore, the nature of the cause of action, is controlled by the question whether upon the facts the title to the property is regarded as having passed to the buyer or as still remaining in the seller.   In the former case the seller is entitled to recover the contract price; while in the latter case he may recover damages measured by the difference between the contract price and the market price at the time and place of delivery.

The cases elsewhere have not been harmonious upon this subject, but the question has been examined by this court, and the distinction between the two classes of cases clearly recognized.

In *Pittsburgh, etc., R. W. Co.* v. *Heck,* 50 Ind. 303 (19 Am. R. 713), it was said:

"It is conceived that in all cases of contracts for the sale of personal property, where it has any market value, the vendor, before he can recover of the vendee the contract price, must have delivered the property to the vendee, or have done such acts as vested the title in the vendee, or would have vested the title in him, if he had consented to accept it; for the law will not tolerate the palpable injustice of permitting the vendor to hold the property, and also to recover the price of it."

Among other quotations made in the course of the opinion, the following was quoted from *Ganson* v. *Madigan,* 13 Wis. 67 : " Where the vendor has actually taken all the steps

necessary to vest the title to the goods sold in the vendee, he may sue for goods sold and delivered, and the rule of damages would be the contract price. But where he is ready and willing to perform, and offers to do so, but the vendee refuses, even though the title is not vested in the vendee, the vendor still has his action on the contract for damages. But the rule of damages in such case would be the actual injury sustained, which is ordinarily the difference between the value of the property at the time of the refusal, and the price agreed on."

The following was quoted from *Dustan* v. *McAndrew*, 44 N. Y. 72: " The vendor of personal property in a suit against the vendee for not taking and paying for the property, has the choice ordinarily of either one of three methods to indemnify himself: 1. He may store or retain the property for the vendee, and sue him for the entire purchase price. 2. He may sell the property, acting as the agent for this purpose of the vendee, and recover the difference between the contract price and the price obtained on such resale; or, 3. He may keep the property as his own, and recover the difference between the market price at the time and place of delivery, and the contract price."

In *Indianapolis, etc., R. W. Co.* v. *Maguire*, 62 Ind. 140, it was held (citing *Pittsburgh, etc., R. W. Co.* v. *Heck, supra,*) that there could be no recovery by the seller of personal property as upon a sale and delivery, where there was no proof of anything done on the part of the plaintiff which divested him of his title or which restricted him in his control over the property. In *Fell* v. *Muller*, 78 Ind. 507, the same distinction was recognized.

In *Shawhan* v. *VanNest*, 25 Ohio St. 490 (18 Am. R. 313), the plaintiff had agreed with the defendant that for a certain sum the former would furnish the materials and make for the latter a carriage in accordance with the defendant's directions, and have it completed and ready for delivery at a certain place on a certain day. The plaintiff alleged that he had complied

with the contract on his part, and at the time stipulated had tendered the carriage to the defendant at the place appointed, and had requested him to accept and pay for it, which he refused to do. On the trial the evidence established the contract and the other averments of the petition, and showed that the plaintiff was still keeping the carriage subject to the defendant's order. It was held that the plaintiff was entitled to recover, as prayed in the petition, the contract price and interest thereon.

In *Hayden* v. *Demets*, 53 N. Y. 426, it was said : "Upon a valid sale of specific chattels, when nothing remains to be done by the vendor except delivery, whether conditioned upon payment or not, the right of property passes to the vendee, at whose risk it is retained by the vendor. The same consequence as to title results from a valid tender, upon an executory contract. Upon the refusal of the vendee to accept and pay the price, the vendor, upon proper notice, may sell the property and recover the difference, or he may sue for the difference between the contract and actual price, in which case he elects to retain the property as his own ; or he may recover the contract price, in which case he holds the property as trustee for the vendee, and is bound to deliver it, whenever demanded, upon receiving payment of the price. In selling the property after tender and refusal, the vendor acts as the agent and trustee of the vendee, to whom the title is deemed to have passed by the tender. The right of the vendor to recover the price of the goods, if he chooses to risk the solvency of the vendee, necessarily results."

In *Smith* v. *Wheeler*, 7 Oregon, 49 (33 Am. R. 698), it was said : " The law, undoubtedly, is that where delivery of goods by a vendor at a particular place, and payment of the price by the vendee are concurrent acts, an actual delivery or tender of the goods at the place is necessary, in order to entitle the vendor to sue for the price, but there are exceptions to the rule." And the case then before the court was held to be an exception. There the plaintiffs were to manufacture certain

heavy machinery and deliver it to the defendants at a certain date on board the cars of a certain railroad, when the defendants were to receive it and pay the contract price. When the machinery was completed and ready for delivery, the defendants either neglected or refused to furnish the cars as they had agreed to do. It being impossible to make delivery or tender through the fault of the defendants, the plaintiffs were held to be excused from tender, and entitled to recover the contract price. See *Johnson* v. *Powell*, 9 Ind. 566.

In the case at bar, the thing to be delivered was of such a nature that in its manufactured form it could be of but comparatively small value to any person other than the defendant, and perhaps the case is one in which the rule permitting a recovery of the contract price should be carried as far as possible in favor of the seller. But under the contract the delivery of the monument at Waynetown, and the payment of the contract price, were to be concurrent acts. To entitle the plaintiff to the contract price, it was incumbent on him to proceed to the point of putting the title in the defendant, though the possession might remain in the plaintiff as trustee. He alleges that upon receiving the monument he notified the defendant, and informed her that he was ready to put it up in accordance with the terms of said agreement, and that she refused to receive it and to permit him to put it up; that he has complied with all the terms and conditions of said contract on his part, except in so far as he has been prohibited from so doing by the acts of the defendant and her agents; that he is ready and willing in all respects to comply with his said agreement; that he has demanded permission of the defendant and her agents to complete his part of the agreement, but he has been and is refused such permission.

It does not appear that he tendered the property to the defendant at the place appointed for delivery, or that it was impossible for him to make such tender, or that he was prohibited, prevented or excused by the defendant from making the tender. The contract made no requirement for him to

put up the monument or to do anything which mere prohibition would prevent.

He would have fulfilled his part of the contract by delivering the monument to the defendant at Waynetown. He would have put the title in the defendant and entitled himself to the contract price by a tender. *Schrader* v. *Wolflin*, 21 Ind. 238.

We think that the complaint does not show all the facts necessary to make a cause of action for the recovery of the contract price of the monument. It does not follow that it does not state facts sufficient to constitute a cause of action. It shows a breach of the contract by refusal to accept the monument which, without a passing of the title, was sufficient to support an action in which the measure of damages is the contract price, less the market value of the property at the place and time where and when it should have been accepted, or if there was no market at that place the measure of damages would be the difference between the contract price and the value of the property at the place of delivery, determined by the market value at some other reasonably convenient place, and the reasonable cost of transportation to that place. *Harris* v. *Panama, etc., R. R. Co.*, 58 N. Y. 660; *Cahen* v. *Platt*, 69 N. Y. 348 (25 Am. R. 203). Though the monument might have no market value in any place in its manufactured form, it does not follow that the material of which it was composed had no such value; and though this might be very small compared with the value as a monument, the defendant, by her refusal, and the plaintiff, by his failure to transmit the title from himself, would be confined to such a mode of ascertaining the value, the amount of which should be deducted from the contract price. This difference would be the damages naturally resulting from the breach, such damages as would be presumed to accrue, and might therefore be recovered under a general allegation of damages, such as was contained in the complaint. *Lindley* v. *Dempsey*, 45 Ind. 246; *Hadley* v. *Prather*, 64 Ind. 137.

The complaint, though not a good specimen of pleading, was not insufficient on demurrer.

There was an answer, consisting of several paragraphs, the first being a general denial. A demurrer to the fifth paragraph was sustained, and this ruling is assigned as error. This paragraph is called by counsel for appellant a plea in abatement, and the matter contained in it, if available for any purpose, could only be regarded, if well pleaded, as matter in abatement. The code of 1881, section 365, R. S. 1881, provides: "An answer in abatement must precede, and can not be pleaded with an answer in bar, and the issue thereon must be tried first and separately. If the issue be found against the answer, the judgment must be that the party plead over, and against him for all costs of the action up to that time."

The fifth paragraph, being pleaded with pleas in bar, might have been struck out on motion. An equivalent result was had by sustaining the demurrer, and there was, therefore, no available error.

A trial of the issues formed resulted in a verdict for the plaintiff for $400. Pending a motion made by the defendant for a new trial, the plaintiff filed a remittitur for $10 of the amount of the verdict. The motion for a new trial was overruled and judgment was rendered against the defendant for $390.

The amount of the verdict was arrived at by deducting from the contract price of $450 the sum of $50 as the price of the crown, which had been left off. There was evidence that it would cost about $10 to take the monument from Crawfordsville, where it had remained, to Waynetown and put it up; and perhaps the remittitur was made with reference to this evidence.

The court, upon its own motion, instructed the jury that if they should find for the plaintiff on the issues formed by the answer of general denial, the measure of his damages would be the difference between the contract price of the monument and its market value at the time and place fixed

for its delivery. This instruction was a correct statement of the measure of damages upon the cause of action stated in the complaint.

At the plaintiff's request, the court instructed the jury that if they believed from the evidence that the plaintiff, in pursuance of the contract sued on, procured the manufacture of what is known as a white bronze monument, corresponding with the specifications and description thereof in the contract sued on, and procured it to be shipped to Crawfordsville, Indiana, ready to be delivered to the defendant; and if they further believed that the defendant prevented the delivery of said monument, and that the plaintiff had ever since kept it, not as his own property, but for the defendant, ready at all times to deliver it pursuant to the contract, and was still ready and willing so to do, then the measure of the plaintiff's recovery, if the jury should find for him, should be the contract price of the monument.

The cause of action stated in the complaint determined the measure of the damages which might be recovered if the plaintiff should succeed.

In one instruction the court stated that the measure of damages, if the evidence should sustain the complaint, would be the difference between the contract price and market value; in the other the court told the jury that upon proof of certain facts the plaintiff might recover the contract price.

It is a familiar rule, often referred to by this court, that a plaintiff can not declare upon one theory and recover on another. A cause of action for the recovery of the contract price would be a different cause of action from one for the recovery of the difference between the contract price and the market value.

If the latter instruction could be understood as excusing the plaintiff from doing any act of those necessary to a transfer of title, it would be erroneous, without regard to the character of the complaint. We think, that, under the circumstances, it was susceptible of such construction by the jury.

But aside from this, the instructions were, in effect, contradictory and calculated to confuse and mislead the jury, and the latter admitted of a finding of damages not allowable under the complaint, and for the giving of it a new trial should have been granted.

Other questions discussed by counsel are such that they are sufficiently disposed of in what has been said, or such that they may not arise again. The judgment should be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be reversed, at appellee's costs, and the cause is remanded for a new trial.

