NECK and another, Respondents, vs. MARQUETTE CEMENT
MANUFACTURING COMPANY, Appellant.

*September 16—October 6, 1914.*

*Sales: Breach of warranty: Evidence.*

Where the contract under which cement was sold specified that
it should "conform to standard specifications for Portland
cement adopted by the American Society for Testing Mate-
rials, with methods of testing recommended by the American
Society of Civil Engineers," but did not make such test ex-
clusive, the inferiority of the cement might be shown by
other evidence. So *held* where a carload of cement had all
been used and there was evidence that it had been properly
mixed and laid but that the results obtained were so poor
that much of it had to be replaced, and an expert testified
from examination and from the evidence as to how the work
had been done that the cement did not come up to the stand-
ard required by the specifications.

APPEAL from a judgment of the circuit court for Mar-
quette county: CHESTER A. FOWLER, Circuit Judge. *Af-
firmed.*

Plaintiffs bring this action to recover from the defendant
damages alleged to have been sustained on account of defects
in cement purchased from defendant. The complaint sets
up two causes of action, one on a carload of cement purchased
in July, 1912, and the other on a carload purchased in No-
vember, 1912. It is alleged that the cement was warranted
to be merchantable, marketable cement, well fitted for the
manufacture and making of cement products and for general
use in the construction of cement work; that plaintiffs used
said cement in laying and building a cement floor, and that
thereafter the floor was found to be cracked, checked, and
chipped, and that the floor was not lasting and durable, but
was soft, defective, and worthless, and that plaintiffs were
and will be compelled to tear out such defective floor and re-
build and reconstruct it; also that said cement was used in

the manufacture of cement blocks, for use in the erection and construction of dwellings, etc.; that the blocks cracked, split, and broke and became worthless, weakening the walls and sides of the building, and that by reason of the defective cement plaintiffs were damaged in the sum of $1,907.50.

By its answer the defendant, in substance, denies that the cement was defective, and alleges that if plaintiffs failed to secure proper results in the use.thereof it was due to carelessness and neglect and the improper manner in which the cement was prepared for use by plaintiffs. Defendant also counterclaimed for the purchase price of the cement. The contract under which the cement was sold contained the following specifications:

"*Specifications.* The cement is to conform to standard specifications for Portland cement adopted by the American Society for Testing Materials, with methods of testing recommended by the American Society of Civil Engineers."

The jury returned the following special verdict:

"(1) Did the cement contained in the July shipment conform to standard specifications for Portland cement adopted by the American Society for Testing Materials, with methods of testing recommended by the American Society of Civil Engineers? *A.* No.

"(2) If to the above question you answer 'No,' then answer this question: What damage did the plaintiffs sustain by reason of the failure to conform thus found? *A.* $400.

"(3) Did the cement contained in the November shipment conform to standard specifications for Portland cement adopted by the American Society for Testing Materials, with methods of testing recommended by the American Society of Civil Engineers? *A.* No.

"(4) If to the above question you answer 'No,' then answer this: What damages did the plaintiffs sustain by reason of the failure to conform thus found? *A.* $287.30."

From a judgment entered in favor of plaintiffs and against the defendant for the sum of $562.35, defendant appeals.

For the appellant there was a brief by *Metzler & Metzler,*

attorneys, and *Benj. T. Roodhouse,* of counsel, and oral argument by *Mr. Roodhouse.*

*D. W. McNamara,* for the respondents.

BARNES, J.   The appellant insists that there was no competent evidence to·show that the cement did not conform to the specifications of the contracts of sale.

As to the second shipment this contention is untenable. Professor Johnson of the State University, an expert on cement construction, made a test of samples of cement taken from such shipment and testified that it did not meet the requirements of the specifications.   It is true that in making his test he departed slightly from the methods recommended by the American Society of Civil Engineers, but he stated that the departure was immaterial, and we find no evidence to contradict this statement.

The first carload of cement had all been used before the controversy arose, so that no test could be made of it.   There was evidence tending to show that it had been properly mixed and laid and that the results obtained were so poor that considerable of it had to be replaced.   Professor Johnson also examined the floors and blocks made from it and testified in substance from the examination made and from the evidence given as to how the cement construction had been made that the first carload did not come up to the standard required by the specifications.   The appellant claims that this evidence was incompetent and that the only way in which the quality of the cement could be determined was by making the test provided for.   The contract did not so provide.   The evidence offered certainly tended to show that this cement did not conform to the standard specifications for Portland cement adopted by the American Society for Testing Materials, with methods recommended by the American Society of Engineers.   In the absence of a provision in the contract making the test the sole evidence of the inferiority

of the cement, the fact might be established by other evidence. *Ganson v. Madigan,* 13 Wis. 67. What the effect of such a provision in the contract would be is not involved and is not decided.

*By the Court.*—Judgment affirmed.