CLARENCE H. CLARK et al., Appellants, *v.* ANN FEY, as Administratrix, etc., Respondent.

Where a contract of sale calls for a specific quantity of goods, to be shipped during a period named, the date of the shipment is a material element in the identification of the goods, and unless goods shipped as specified in the contract are tendered, the contract is not performed; the vendee is not liable for a refusal to accept other similar goods.

Defendant contracted to purchase of plaintiffs 500 tons of old iron rails, at $37.50 per ton to be shipped "from the other side January or February or March, seller's option." In an action to recover damages for breach of the contract it appeared that after the contract rails had arrived and were ready for delivery and within the permitted time of delivery, in a conversation between the vendee and P., the vendor's agent, the vendee said that owing to the fall in price of old rails it would be very difficult for him to take "those rails," and he asked P. to be as easy as he could, and to carry "the rails and give him some rails later." P. told him he "would carry the rails for him and give him some rails a little further on in place of them." No rails were set apart for the vendee until in June; the rails then set apart were not shown to have been shipped in the contract months. The vendee refusing to accept them when tendered they were sold, and plaintiff sought to recover the difference between the contract and selling price. *Held,* that the parol arrangement was to be construed either as an agreement that the vendor having set apart and tendered the contract rails would "carry them" for the account and at the risk of the purchaser, or as an agreement that the original contract should be abandoned, and other and different rails should be delivered and accepted. If the former, plaintiffs were not entitled to recover, as it did not appear that they had carried for the vendee the

contract rails and tendered them for final acceptance. If the latter, the alteration in the terms of the contract amounted to the making of a new contract, which, being by parol, was void under the Statute of Frauds.

(Argued May 7, 1890; decided June 3, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made January 28, 1889, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at circuit.

This action was brought to recover damages for an alleged breach of a written contract for the sale by plaintiffs to John Fey, defendant's intestate, of 500 tons of " old iron ' T ' rails ". at $37.50 per ton.

The terms of the contract as to delivery and payment were as follows :

" Delivery.    Shipment from the other side January or February or March, Seller's option.

" Payment.    Thirty-two (32.50) Dollars and fifty cents cash according to invoice weights on handing order on vessels, balance on handing weighmaster's return."

The facts, so far as material, are stated in the opinion.

*Treadwell Cleveland* for appellants.    The testimony on behalf of the plaintiffs showed that in April, 1880, within the time of the contract, the defendant notified the plaintiffs that he would not take the iron ; nevertheless, the plaintiffs were ready, able and willing to perform the contract in April, 1880, and duly offered to perform it.    (*Cunningham* v. *Judson,* 100 N. Y. 189 ; *Palmer* v. *G. W. Ins. Co.,* 116 id. 605 ; *Duffy* v. *O'Donovan,* 46 id. 223 ; *Blewett* v. *Baker,* 58 id. 106 ; *U. B. K. Co.* v. *Brown,* 9 N. Y. S. R. 101.)   The law is clear that to maintain an action for breach of contract, a plaintiff need not perform or tender performance when the defendant has shown by his words or acts that such acts on the plaintiff's part would be empty and of no effect.

Statement of case.

(*Shaw* v. *R. L. Ins. Co.*, 69 N. Y. 293; *Howard* v. *K. L. Ins. Co.*, 73 id. 516; *Muessel* v. *G. M. L. Ins. Co.*, 76 id. 115; *People* v. *E. M. L. Ins. Co.*, 92 id. 105; *Bogardis* v. *N. Y. L. Ins. Co.*, 101 id. 329; *Hochster* v. *De la Tour*, 2 E. & B. 670; *Frost* v. *Knight*, L. R. [7 Exch.] 111; *Blewett* v. *Baker*, 58 N. Y. 613; *Lawrence* v. *Miller*, 86 id. 131; *Selleck* v. *Tallman*, 87 id. 106; *Howell* v. *Gould*, 2 Abb. Ct. App. Dec. 418; *Sears* v. *Conover*, 4 id. 179; *Windmuller* v. *Pope*, 107 N. Y. 674.) The time of performance of a contract required to be in writing under the Statute of Frauds may be waived or modified by parol. (*Pope* v. *T. H. C. & M. Co.*, 107 N. Y. 61; *Fish* v. *Cottenot*, 44 id. 538; *Organ* v. *Stewart*, 60 id. 413, 419; *Onguerre* v. *Luling*, 1 Hilt. 386; *Davis* v. *Talcott*, 14 Barb. 611; *Chapin* v. *Dobson*, 78 N. Y. 74; *Brigg* v. *Hilton*, 99 id. 517; *Stearns* v. *Hall*, 9 Cush. 31; *Norton* v. *Simonds*, 124 Mass. 19; *Hastings* v. *Lovejoy*, 140 id. 261; *Richardson* v. *Cooper*, 24 Me. 450; *Kribs* v. *Jones*, 44 Md. 396; *Gault* v. *Brown*, 48 N. H. 183, 186; *Negley* v. *Jeffers*, 28 Ohio St. 99; *Hickman* v. *Haynes*, L. R. [10 C. P.] 598; *Plevino* v. *Downing*, 1 id. 220; Benj. on Sales, § 217.) Whether these words relating apparently to delivery, shall be held to have any force descriptive of the subject of the contract or not, we submit that such descriptive force, *ex rei natura*, ceased to apply when once goods of that precise character had been tendered. (Benj. on Sales, 151; *Garfield* v. *Paris*, 96 U. S. 563; Brown on Stat. of Frauds, chap. 15; *Stowe* v. *Browning*, 68 N. Y. 598, 604; *Torry* v. *Wheeler*, 25 id. 525; *Hunt* v. *Cook*, 75 id. 454; *Hatch* v. *S. O. Co.*, 100 U. S. 124.) The defendant was estopped from setting up the invalidity of his acts of April, 1880. (*Wood* v. *Rabe*, 96 N. Y. 414, 425; *Ryan* v. *Fox*, 34 id. 307; *Organ* v. *Stewart*, 60 id. 413, 420; *Hill* v. *Blake*, 97 id. 221; *Newman* v. *Nellis*, 97 id. 285; *Moses* v. *Beerling*, 31 id. 462; *Swan* v. *Seamans*, 9 Wall. 274; *Windmuller* v. *Pope*, 107 N. Y. 675; *Fleischman* v. *Stern*, 90 id. 110; *Embury* v. *Connor*, 3 id. 511; *In re B. P. Comrs.*, 45 id. 234, 239; *In re Cooper*, 93 id. 507.)

*John E. Parsons* and *Albert G. McDonald* for respondent.
The contract required the plaintiffs to deliver rails shipped in
January, February or March, 1880. This was a material pro-
vision. To recover it was necessary for the plaintiffs to show
that they did tender or that they could tender the requisite
quantity of rails shipped during the contract period. (*Hill* v.
*Blake,* 97 N. Y. 216 ; *Tobias* v. *Lissberger,* 105 id. 404 ;
*Norrington* v. *Wright,* 115 U. S. 188 ; *Filley* v. *Pope,* Id.
213 ; *Bowes* v. *Shand,* L. R. [2 App. Cas.] 455.) If the
appellants are limited to the case made by their complaint,
they have no pretense of a claim. And, as there was no
amendment of the complaint, either asked or made, they are
to be limited to the case which it sets forth. (*Clark* v. *Post,*
113 N. Y. 17.) The plaintiffs' case if the complaint had
been amended so as to make it relevant, would not be helped
by the testimony of Mr. Post, from which it is claimed that
on or about April 20, 1880, it was agreed between him and
Mr. Fey that he should carry the rails for Mr. Fey and later
give him other rails in their place. (*Hill* v. *Blake,* 97 N. Y.
216 ; *Schultz* v. *Bradley,* 57 id. 646 ; *Stone* v. *Browning,* 68
id. 598 ; 2 Benj. on Sales [3d ed.], § 917; *Croninger* v.
*Crocker,* 62 N. Y. 151 ; *Rommel* v. *Wingate,* 103 Mass. 327 ;
*Rodman* v. *Guilford,* 112 id. 405.) If the bills of lading
furnished evidence of time of shipment, they prove that the
rails by the Ivanhoe and Apotheke Deising, the only rails of
which, so far as the evidence shows, Mr. Fey heard until the
trial, were not shipped within the contract period. (*Dickson*
v. *Lodge,* 1 Starkie, 226; *Wolf* v. *N. M. Ins. Co.,* 20 La.
Ann. 583.)

FINCH, J. It is not disputed that the rails, which were
finally tendered to the vendee and then sold for his account
and risk, producing a deficiency below the contract price,
which deficiency forms the subject of the action, were not the
rails which the vendee bought and the vendors sold. By the
original written contract those rails were to be 500 tons
shipped "from the other side, January or February or March,

seller's option." It is the settled rule that, in a case like the present, the date of the shipment is a material element in the identification of the property. (*Hill* v. *Blake*, 97 N. Y. 216; *Tobias* v. *Lissberger*, 105 id. 404.) It was not 500 tons of rails generally that were the subject of the contract, but a specific quantity shipped from the other side during the three named months, and unless such were tendered the contract was not performed. The offer of other rails would impose no obligation upon the purchaser. It is clear, therefore, that the tender finally made was not of the property specified in the contract, and left no liability upon the vendee resulting from his refusal to accept, unless there is something else about the case.

There is something else about the case upon which the vendors rely as entitling them to recover, and that is an alleged parol modification of the original contract which made the final tender and the sale founded upon it sufficient. A conversation relative to the existing agreement took place between the vendee and Mr. Post, representing the vendors, on or about the twentieth day of April. That was within the permitted time of delivery. The seller might have shipped during the last days of March by sail instead of by steam and so had an average of from thirty-five to forty-five days for the arrival. The conversation, as detailed by Mr. Post, was thus stated : "Mr. Fey came in and said that in consequence of the price of old rails falling from $45 a ton to practically $23 a ton, it was a very difficult thing for him to take *those rails;* that he could not sell them now to anybody, and wanted me to be as easy with him as I could, and wanted me to carry *the rails* and give him *some* rails later. I told him, on personal considerations — I had known him for a long time — that I would do everything that I could to accommodate him. I said I would carry *the rails* for him, and give him *some* rails a little further on *in place of them*, and perhaps the price would get better." It is evident that this conversation on the part of Mr. Fey was based upon the assumption that the contract rails had arrived and were ready for delivery and had

been duly tendered. Indeed, Mr. Post was asked, " In that conversation at that time, did you say anything about your readiness to deliver the iron that he had bought of you ? " and answered, " Perhaps I should have said earlier that that *was* the basis of having informed him we were ready to do it, and wanting him to pay for it was the reason he wanted us to make it easy for him." Mr. Post was further asked : " You did make such an offer to him at that time ? " and replied in the affirmative. And thus the basis of this new negotiation was an understanding on both sides that the contract rails had arrived, were ready for delivery, and that payment was due. By the contract the purchase-price was payable in part upon delivery to the vendee of " order on vessels " and balance " on handing weighmaster's return." No such order or return was tendered in April, and the facts leave it doubtful whether the sellers in the month of April were in possession of or could have tendered either. But assuming that they could have made delivery in the mode prescribed by the contract, and that they were excused from the formal tender of the papers by the act of Fey, it is yet apparent that one of two things followed, dependent upon the construction of the parol agreement. That is somewhat ambiguous in its terms, but it could have had only one of two meanings. It must be construed as an agreement, either that the plaintiffs, having set apart and tendered the contract rails which had arrived, and payment for which was due, would " carry them " for the account and at the risk of Fey for an indefinite but reasonable period ; or that the sale of the contract rails should be mutually abandoned, and instead thereof the sellers should be permitted to deliver and the buyer would accept other and different rails from those specified in the written contract. I do not see how, upon either construction, the plaintiffs could recover.

They did not " carry " the contract rails. At the conversation in April none had been set apart and identified as the property of Fey under the contract, even if we concede that such separation and identification was within the then power of the sellers. They had not set apart rails for Fey as his and

as being carried for him. It was not until some time in June that five hundred tons of rails were set apart as the property of Fey, and that was done upon the requirement of parties interested with the vendors, who " insisted upon it that Mr. Fey should take those rails so as to make him pay the storage." It is plain that up to that time no specific rails had been set apart or identified as the contract property of Fey upon which he was liable for storage. But the sellers did not carry the contract rails. If they even in any manner separated or identified them, they sold them to other parties, for Mr. Post says that he told Fey in June " we were *going* to set aside five hundred tons of rails for him, and he said that was all right." The five hundred tons thus set apart in the month of June to be carried for Fey, and upon which, therefore, he was to pay storage, were rails not shipped in the contract months, or not shown to have been so shipped. When ultimately sold, it appears from the bills of lading, that some were shipped on the Ivanhoe at Antwerp April 9, 1880, some by the Apotheke Deising, at Amsterdam, April 28, 1880, and some by the Sara Caino, whose date of sailing from the other side is unproved. And it was these rails which the vendee was called upon to accept and which were sold for his account on his refusal. So that the sellers did not carry for Fey the contract rails and tender them for final acceptance.

The other view of the April conversation dispenses with such tender of contract rails, and permits the carrying and offer of any old rails shipped from the other side irrespective of the date of shipment. But that is a new contract and not a modification of the old one. It substitutes for the sale of the contract iron a new sale of different iron, which never before had been the subject of a contract. It was not merely a change of the date of delivery and the time of payment, but of the very subject-matter of the contract, of the thing sold on the one hand and purchased on the other. It touched and altered the consideration and substance of the agreement instead of merely modifying the terms and manner of performance. The old contract was not to be performed at all. The

property which it stipulated about was not to be sold by one party or bought by the other; but instead thereof and in place of the iron to which it related, a new contract for the sale and purchase of different iron entirely. That new contract was by parol and void under the Statute of Frauds; and so neither view of the new agreement will enable the plaintiffs to recover. The old contract was rescinded, the new one remained wholly executory on both sides.

We discover no ground upon which the judgment can be deemed erroneous and it should be affirmed, with costs.

All concur.

Judgment affirmed.