(10 Misc. Rep. 645.)

WALLACE, MULLER & CO., Limited, v. VALENTINE et al.

(Common Pleas of New York City and County, Special Term. January, 1895.)

SALE—RIGHTS OF BUYER—WAIVER BY ACCEPTANCE.

Where a contract of sale provides that the goods shall be shipped at a certain time and in a certain manner, and the buyer accepts them, knowing that such provision was not complied with, he thereby affirms the sale, and cannot, in an action for the price, set up a counterclaim for the breach, though he protested at the time of acceptance that the goods were not according to contract.

Action by Wallace, Muller & Co., Limited, against Napoleon Valentine and David H. Valentine, to recover the price of goods sold. Plaintiff demurs to a counterclaim set up in the answer. Sustained.

Eugene Frayer, for plaintiff, citing:

Bowes v. Shand, L. R. 2 App. Cas. 455; Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12; Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. 19; Pope v. Allis, 115 U. S. 363, 6 Sup. Ct. 69; Hill v. Blake, 97 N. Y. 216, 220; Clark v. Fey, 121 N. Y. 470, 474, 24 N. E. 703; Shields v. Pettee, 2 Sandf. 262; Reed v. Randall, 29 N. Y. 358; Iron Co. v. Pope, 108 N. Y. 232, 15 N. E. 335; Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349; Flower v. Lance, 59 N. Y. 603.

Titus & Dowling, for defendants.

DALY, C. J.    The action was brought to recover $10,500, the purchase price of 5,000 bags of Egyptian onions, sold and delivered under the following contract:

"New York, May 8th, 1894.

"Sold for account of Messrs. Wallace, Muller & Co., to Messrs. N. & D. H. Valentine. About five thousand bags (5,000), of not more than 112 lbs. each, Egyptian onions, at two dollars and seven cents ($2.07) per cwt., gross weight, ex pier port of New York. Terms, thirty days' note, or less 1 per cent. for cash, buyer's option. To be shipped from Alexandria, Egypt, to Liverpool, per steamer or steamers sailing on or about May 12th next, and from there to be forwarded per mail steamer or steamers to New York. The onions to be fair, average quality of this season crop. Customhouse or city weigher's weight; sellers' option. The goods to be delivered in good condition.

"Josiah Rich, Broker.

"Accepted.    N. & D. H. Valentine."

The defendants admit the contract, but counterclaim $12,500 damages for breach thereof, setting up that the plaintiff failed to ship onions from Alexandria until May 24th, although there were steamers leaving said port between May 8th and May 24th, by which the onions might have been shipped, in accordance with the contract; also that the onions were not shipped by mail steamer from Liverpool, but by a freight steamer, although there were mail steamers leaving said port, by which they might have been shipped, so that the onions, instead of arriving at New York on or about June 7,

1894, as plaintiff's agent represented they would, and on or about which date they would have arrived if the contract had been performed, did not arrive until June 26th, by which time their market value had been depreciated; that when said onions arrived they were tendered to the defendants, who accepted the same under protest and without prejudice, and so notified the plaintiff, protesting against the shipment thereof having been made from Alexandria by steamer sailing May 24, 1894, and against shipment being made from Liverpool by freight steamer instead of by mail steamer; that the defendants subsequently tendered to the plaintiff notes in payment for said goods consistent with and subject to said protest, which plaintiff refused to receive; and that by reason of the premises defendants have been damaged in the sum $12,500. To this counterclaim the plaintiff demurs, on the ground that the facts do not constitute a cause of action; its contention being that no claim for damages survived the acceptance and use of the goods by defendants, with full knowledge of the facts, although the goods did not in all respects answer the description of the contract. This position is well taken. The contract of sale was executory, and there was no warranty which survived acceptance of the goods with knowledge of all the facts. The time, place, and manner of shipment set forth in the contract were part of the description of the goods, and a material element in the identification of the property. The tender of goods so shipped was a condition precedent, which the vendor was bound to perform before the vendee was bound to accept; and the latter might refuse to receive goods shipped at any other time or place, or in any other manner. This is settled by many authorities. "There is first mentioned the thing that is sold; not iron simply, but 'No. 1 Eglinton Scotch pig iron, per shipment by sail in December, 1879, or January, 1880.' I do not see that one word of this description can be omitted. * * * Iron shipped in February is not within the option." Hill v. Blake, 97 N. Y. 216–220. "It is a settled rule that in a case like the present the date of the shipment is a material element in the identification of the property." Clark v. Fey, 121 N. Y. 470, 474, 24 N. E. 703. See, also, Tobias v. Lissberger, 105 N. Y. 404, 12 N. E. 13; Filley v. Pope, 115 U. S. 213, 6 Sup. Ct. 19; Bowes v. Shand, 2 App. Cas. 455. If at the time of delivery it was not known or apparent that the goods were not shipped according to contract, the description might operate as a warranty surviving acceptance under such delivery, so as to entitle the vendee to return the goods after a reasonable time and opportunity for ascertainment of the facts. But in this case it appears from the allegations of the counterclaim that defendants knew at the time of acceptance that the goods were different from those described in the contract. If there had been an independent collateral warranty with the executory contract of sale, the right to claim damages would have survived acceptance of the goods tendered. Brigg v. Hilton, 11 Daly, 335, 341, affirmed 99 N. Y. 517, 3 N. E. 51; Day v. Pool, 52 N. Y. 416; Canning Co. v. Metzger, 118 N. Y. 260, 23 N. E. 372. But there was no such warranty in this case. There was no war-

ranty except that which was implied in the sale itself, and there was no independent or collateral agreement of warranty. Upon a sale of goods not yet set apart or otherwise identified but by description in an executory contract of sale without such warranty, acceptance is a waiver of the condition precedent to be performed by the vendor, and an acknowledgment of performance of the contract. In Iron Co. v. Pope, 108 N. Y. 236, 15 N. E. 335, was a sale and agreement to deliver No. 1 extra foundry pig iron of the Coplay Iron Company, Limited, and a counterclaim that the iron delivered was not No. 1 extra iron, but a grade of iron of inferior quality, which the purchaser, however, retained, and never offered to return. It was held that there was no collateral warranty or agreement as to the quality of the iron; that the representation as to the kind and quality of the iron was part of the contract of sale itself, descriptive simply of the article to be delivered in the future; that the vendees, by acceptance without offer to return, must be conclusively presumed to have acquiesced in the quality of the iron, and such acceptance deprived them of any right to make complaints; citing Hargous v. Stone, 5 N. Y. 73; Reed v. Randall, 29 N. Y. 358; McCormack v. Sarson, 45 N. Y. 265; Dutchess Co. v. Harding, 49 N. Y. 323; Gaylord M. Co. v. Allen, 53 N. Y. 515.

The effect of defendants' acceptance of the goods was not altered by their protesting to plaintiff against the shipments as made by the latter in violation of the contract. Where a picture was purchased from a specimen exhibited, and at the time of delivery objection was made by the purchaser on the ground of inferior execution, but without offer to return, the court held that, "having received it under a specific contract, he must either abide by it or rescind it in toto by returning the thing sold; but he cannot keep the article received under such a specific contract, and for a certain price, and pay for it at less price than that charged by the contract." Grimaldi v. White, 4 Esp. 95, cited in Reed v. Randall, 29 N. Y. 358, 365. Where oil cake was sold and shipped, which defendant considered did not answer the sample, and which he stored, notifying plaintiffs to take it back, but, after further negotiations, he notified them that he would sell, and apply in reduction of his damages, and afterwards sold according to notice in his own name, it was held that he had adopted the goods as his own, and therefore retained no right of set-off against the price. Lord Abinger said:

"We must judge of men's intentions by their acts, and not by expressions in letters which are contrary to their acts. If the defendant intended to renounce the contract, he ought to have given the plaintiffs distinct notice at once that he repudiated the goods, and that on such a day he would sell them by such a person for the benefit of the plaintiffs. The plaintiffs could then have called upon the auctioneer for the proceeds of the sale. Instead of taking this course, the defendant has exposed himself to the imputation of playing fast and loose; declaring in his letters that he will not accept the goods, but at the same time preventing the plaintiffs from dealing with them as theirs. The safest conclusion, I think, for the jury to arrive at was that the defendant, having once adopted the goods as his own, had no longer any power to repudiate them, and therefore retained no right of set-off against the price." Chapman v. Morton, 11 Mees. & W. 534.

The decision in Fuller v. Kemp 138 N. Y. 231, 33 N. E. 1034, though a very different case from the present, well illustrates the principle that no words of protest or disclaimer will affect the legal quality of the act. In the present case, notwithstanding the defendants' protest that the goods were not according to contract, they retained them, and thereby adopted them as their own, which affirmed the sale, the title not passing under an executory contract of this nature until delivery and acceptance. As there was no collateral warranty which survived acceptance of the goods, no right of counterclaim for damages on the part of the vendees remained. Demurrer to counterclaim sustained, with costs.