NOVEMBER TERM, 1910. · 645

Penn-American, etc., Co. *v.* Harshaw, etc., Co.—46 Ind. App. 645.

## PENN-AMERICAN PLATE GLASS COMPANY *v.* HAR-SHAW, FULLER & GOODWIN COMPANY.

[No. 6,582. Filed February 24, 1910. Rehearing denied June 10, 1910. Transfer denied December 13, 1910. Petition to reconsider application to transfer dismissed December 16, 1910.]

1. PLEADING.— *How Construed.*— *Omitted Facts.*— In construing a pleading, omitted facts are considered as unfavorable to the pleader. p. 647.

2. SALES.—*Delivery.*—*Complaint.*—A complaint for goods sold and delivered must affirmatively show a delivery, or facts excusing a delivery. p. 647.

3. CONTRACTS.—*Sales.*—*Delivery.*—*Statute of Frauds.*—*Complaint.* —A complaint alleging the execution of a contract of sale for goods worth over $50, must be regarded as counting upon an oral contract; and unless a delivery or partial delivery was made, the contract will be presumed unenforceable under the statute of frauds. p. 648.

4. CONTRACTS.—*Letters.*—*Complaint.*—A complaint alleging defendant's execution of a written contract for the sale of goods, and a sale and delivery of the goods in accordance therewith, an exhibit being attached to the complaint and made a part thereof containing a copy of the alleged letters constituting the contract, is not bad for failing to allege that such letters were enclosed, directed, stamped, mailed and received, nor for failing to allege performance. p. 649.

5. APPEAL.—*Reversal.*—*Judgment Founded on Good and Bad Paragraphs of Complaint.*—A judgment based upon a complaint containing a good and a bad paragraph, to which demurrers were overruled, will be reversed, where the record fails to show upon which paragraph such judgment rests. p. 650.

6. SET-OFF AND COUNTERCLAIM.—*When Proper.*—A counterclaim consists of a cause of action against the plaintiff, arising out of the same transaction or subject-matter contained in the complaint, and if the allegations thereof fail to show a connection with the plaintiff's cause of action, it will be bad on demurrer. p. 651.

7. SET-OFF AND COUNTERCLAIM.— *Goods Sold and Delivered.*— *Breach of Separate Contract.*— *Unliquidated Damages.*— In an action for goods sold and delivered, unliquidated damages, due to the defendant from plaintiff, caused by plaintiff's violation of a

separate contract from that upon which plaintiff sues, constitutes a proper set-off.  p. 652.

8.  SET-OFF AND COUNTERCLAIM.—*Sufficiency.*—A set-off is regarded as, virtually, a cross-action, and must be sufficient to state a cause of action against the plaintiff.  p. 655.

9.  CONTRACTS.—*Language.*—*Construction.*—In construing a written contract the court will assume that the language used embodies the entire contract, and will neither disregard the words used, descriptive of the subject-matter, nor any material incident thereof, nor will it insert words which the parties have not made use of.  p. 655.

10.  CONTRACTS.—*Words.*—*Use of, in Same Sense.*—To constitute a contract the parties must have used the words constituting it, in the same sense.  p. 656.

11.  CONTRACTS.—*Sales of Engaged Goods.*—*Conditions of Arrival.* —A sale, "subject to arrival * * * early in December," of goods "engaged for November shipment from Europe," imports a warranty that the goods are "engaged," but not that they will be delivered to the person who engaged them, nor that they will arrive. p. 656.

From Superior Court of Madison County; *Cassius M. Greenlee,* Judge.

Action by Harshaw, Fuller & Goodwin Company against the Penn-American Plate Glass Company.  From a judgment for plaintiff, defendant appeals.  *Reversed.*

*John W. Lovett* and *G. B. Slaymaker,* for appellant.
*Walter Vermillion* and *Blanchard J. Horne,* for appellee.

MYERS, C. J.—The appellee in the court below, upon a complaint in two paragraphs, recovered a judgment against appellant for $411.75.  Appellant's demurrers to the first paragraph and the amended second paragraph of complaint were overruled, and these rulings are assigned as error.

The first paragraph states "that defendant is indebted to plaintiff in the sum of $381.25 for goods and merchandise sold by plaintiff to defendant, bills of particulars of which are filed with, made a part of this complaint and marked 'Exhibit A'; that said sum is now due and wholly unpaid, and judgment is demanded.  'Exhibit A' was as follows:

"Harshaw, Fuller & Goodwin Company
                   sold to
Penn-American Plate Glass Co.
December 16, 1905,
    1-Bbl. Powd "F" Double Washed Saxony Manganese
        908 pounds @ 2$\frac{1}{4}$c pound........... $20.43
December 13, 1905,
    21 kegs arsenic
        11,522
          420

    11,102 pounds @ 3$\frac{1}{4}$c pound.......... 360.82

                         $381.25."

Against this paragraph it is argued (1) that it does not show a delivery of the goods, but merely a contract of sale; (2) that it does not show a performance, or a readiness and willingness to perform the contract on the part of plaintiff.

The strength of the pleading before us is to be tested by the rule that omitted facts are to be considered as adverse to the pleader, "under the general presumption that a party will set forth all the facts favorable to his case." Cushman v. Cloverland Coal, etc., Co. (1908), 170 Ind. 402, 16 L. R. A. (N. S.) 1078, 127 Am. St. 402.

The paragraph in question proceeds upon the theory of a sale and delivery of certain goods by the seller to the purchaser. There is no allegation that the goods were ever furnished.

In the case of Bricey v. Irwin (1890), 122 Ind. 51, it is said: "It is not sufficient, where the action is for services rendered or goods furnished, to state, by way of recital, that the services and goods were of a designated value, but it must be directly averred as a traversable fact that the services were rendered and that the goods were furnished. It cannot be possible that a complaint to recover for the value of services rendered or goods furnished, can be good, on demurrer, without a direct averment of per-

648    APPELLATE COURT OF INDIANA,

.Penn-American, etc., Co. v. Harshaw, etc., Co.—46 Ind. App. 645.

formance, and where there is no allegation that the services were rendered or that the goods were furnished, there is no averment of performance.''

If this paragraph be considered as counting upon the recovery of the contract price of the goods alleged to have been sold to appellee, it fails to state facts within the principle reaffirmed in the case of *Fell* v. *Muller* (1881), 78 Ind. 507, 512, where it is said: '' 'It is conceived that in all cases of contracts for the sale of personal property, where it has any market value, the vendor, before he can recover of the vendee the contract price, must have delivered the property to the vendee, or have done such acts as vested the title in the vendee, or would have vested the title in him, if he had consented to·accept it; for the law will not tolerate the palpable injustice of permitting the vendor to hold the property and also to recover the price of it.' [*Pittsburgh, etc., R. Co.* v. *Heck* (1875), 50 Ind. 303]''

The rule seems to be that in an action by the seller of personal property as upon a sale and delivery, he must allege and prove not only a sale, but delivery as well; for until there is a delivery of the goods sold, or an excuse shown exempting the seller from making a delivery, there is a lack of performance of the contract upon the seller's part. *Indianapolis, etc., R. Co.* v. *Maguire* (1878), 62 Ind. 140; *Hayden* v. *Demets* (1873), 53 N. Y. 426; *Gaar, Scott & Co.* v. *Fleshman* (1906), 38 Ind. App. 490; *Gardner* v. *Caylor* (1900), 24 Ind. App. 521; *Dwiggins* v. *Clark* (1884), 94 Ind. 49, 48 Am. Rep. 140.

So far as appears from the pleading in question, the contract of sale was an oral one, and the contract price exceeded the sum of $50. And, as has been suggested, 3. there is no allegation in the complaint taking the contract out of the statute of frauds. §7469 Burns 1908, §4910 R. S. 1881. See *Porter* v. *Patterson* (1908), 42 Ind. App. 404. For the reasons suggested, appellant's

NOVEMBER TERM, 1910.      649

Penn-American, etc., Co. *v.* Harshaw, etc., Co.—46 Ind. App. 645.

demurrer to the first paragraph of the complaint should have been sustained.

The amended second paragraph of complaint alleges that appellant and appellee entered into a contract, in writing, by letters and correspondence during the months of October, November and December, 1905, by the terms of which contract appellee agreed to sell and deliver to appellant 11,102 pounds of arsenic at three and one-fourth cents per pound; that by the terms of said agreement appellant is indebted to appellee for such goods and merchandise in the sum of $381.25; that said sum is wholly due and unpaid. Copies of letters, alleged to have been written by each party to the other, are made a part of this paragraph by exhibit. These letters show a proposal on the part of appellee to furnish appellant twenty-five kegs of arsenic "f. o. b. Cleveland at $3.25 per hundred, net 30, 1 per cent, 10," and that appellant accepted appellee's proposal.

Appellant insists that the demurrer to this paragraph should have been sustained, for the reason that it fails to set forth the essential terms of the contract; that it fails to show that the letters so written were enclosed in an envelope, directed, stamped and mailed to and received by the parties for whom they were intended, and that it fails to allege performance on the part of appellee. None of these objections is well taken. The transaction between the parties is stated in the body of the complaint in general terms. The alleged written instrument is made a part of it, and may be considered to relieve it from the defect of uncertainty. *Deane* v. *Indiana Macadam, etc., Co.* (1903), 161 Ind. 371.

The several letters from one party to the other appear to have been signed, and, combined, constituted the written contract relied on by appellant, and, together, made up the written instrument containing all the essential elements of

a contract (*Justice* v. *Lang* [1870], 42 N. Y. 493, 1 Am. Rep. 576), which was the foundation of the action. Considering the letters as expressing the terms of sale and purchase between the parties, and being a part of the complaint, they speak for themselves in aid of the general allegations as to the terms of the contract.

As was said in the case of *Mercer* v. *Herbert* (1872), 41 Ind. 459, 462: "When a pleading is founded upon a written instrument, and a copy is referred to in, and filed with, such pleading, it becomes a part thereof, and in determining the sufficiency of such pleading, such instrument is regarded and treated as composing a part thereof. When an instrument is thus made a part of a pleading, it speaks for itself, and it is not incumbent on the pleader to state the substance thereof." See, also, *Blount* v. *Rick* (1886), 107 Ind. 238, 243; *Miller* v. *Wayne, etc., Loan Assn.* (1904), 32 Ind. App. 480.

Appellant, in support of its contention, cites the case of *Western Union Tel. Co.* v. *State, ex rel.* (1905), 165 Ind. 492, 3 L. R. A. (N. S.) 153. The court in that case was considering an answer based on an alleged written contract, which of itself did not disclose its relation to the alleged cause of action. The court held that facts must be stated showing the effect of the contract upon the cause of action to which it was pleaded. No such question is here presented.

There was no error in overruling the demurrer to this paragraph.

Having concluded that a demurrer was overruled to an insufficient paragraph of the complaint, and it not affirmatively appearing that the decision of the court and the judgment in favor of plaintiff rest upon the good paragraph, the judgment must be reversed. *Cleveland, etc., R. Co.* v. *Perkins* (1908), 171 Ind. 307; *Lake Erie, etc., R. Co.* v. *McFall* (1905), 165 Ind. 574; *Baltimore,*

*etc., R. Co.* v. *Hunsucker* (1904), 33 Ind. App. 27; *Terre Haute, etc., R. Co.* v. *Sherwood* (1892), 132 Ind. 129, 17 L. R. A. 339, 32 Am. St. 239.

Other questions are presented and relied on for a reversal of the judgment in this case. They are based upon assignments challenging the rulings of the court in sustaining a demurrer to each of the three paragraphs of set-off, and to each of the three paragraphs of the counterclaim. Each paragraph of the counterclaim proceeds upon the theory of appellee's breach of a certain contract, to the damage of appellant.

It is first argued that the matter pleaded as a counterclaim is not shown to have arisen out of, or that it was connected with, the original cause of action. Our code authorizes "any matter arising out of or connected with the cause of action which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages" to be pleaded as a counterclaim. §355 Burns 1908, §350 R. S. 1881.

It is also further provided that "if any defendant personally served with notice omit to set up a counterclaim arising out of the contract, or transaction set forth in the complaint as the ground of the plaintiff's claims, or any of them, he cannot afterward maintain an action against the plaintiff therefor, except at his own costs." §356 Burns 1908, §351 R. S. 1881.

In the case of *Excelsior Clay Works* v. *DeCamp* (1907), 40 Ind. App. 26, this court held that §§355, 356, *supra,* should be construed together, and if the matter set up by way of counterclaim arises out of, or is connected with, the contract or transaction, "which is the foundation of the plaintiff's action, the counterclaim may be entertained," and "in determining whether the respective claims asserted by the parties arise out of the same transaction, the court is

not confined to the facts stated by the plaintiff, but may take into account the facts set up by the defendant, and will from them all determine whether the claims arise out of the same transaction.''

Applying the doctrine thus announced to the facts exhibited by the complaint and the counterclaim, we are unable to say that the claim of appellant and the claim of appellee grew out of one and the same contract, or that they arose out of the same transaction. In the absence of facts bringing the matter set up by way of counterclaim within the provisions of the statute, we are compelled to hold that the demurrer to each paragraph of the counterclaim was properly sustained. *State, ex rel.,* v. *Spencer* (1908), 42 Ind. App. 650; *Miller* v. *Roberts* (1886), 106 Ind. 63; *Douthitt* v. *Smith* (1880), 69 Ind. 463; *Standley* v. *Northwestern, etc., Ins. Co.* (1884), 95 Ind. 254; *Blue* v. *Capital Nat. Bank* (1896), 145 Ind. 518.

Returning to the paragraphs of set-off, our code (§353 Burns 1908, §348 R. S. 1881) provides that ''a set-off shall be allowed only in actions for money-demands upon

7. contract, and must consist of matter arising out of debt, duty, or contract, liquidated or not, held by the defendant at the time the suit was commenced, and matured at or before the time it is offered as a set-off.''

Appellee's action against appellant was for a money demand upon a contract. To that action appellant pleaded a set-off in three paragraphs, consisting of unliquidated damages alleged to have accrued to appellant from appellee, by reason of the latter's breach of a certain written contract between them for the sale and purchase of certain goods.

The questions here presented call for a brief recital of a few facts furnished by appellant in support of its right of set-off. Each paragraph of set-off is based on an alleged written contract between the parties, in the form of letters.

written one to the other. On the part of appellee an offer or proposal of October 31, 1905, is in the following form:

"In reply to your postal of yesterday, we take great pleasure in quoting you for prompt reply, and subject to arrival: 1 C.L. refined powdered white arsenic from a lot we have engaged for November shipment from Europe to New York, providing for arrival there early in December, at $2.95 per 100 pounds. F. o. b. New York, net 30, 1 per cent, 10. Thanking you kindly for this inquiry, and hoping in course to receive your valued order, we remain," etc.

A copy of appellant's letter of acceptance of this proposal is not set out in either paragraph, but excuse for such failure is shown. The following facts are alleged: On November 3, 1905, appellant did unqualifiedly accept in writing said offer or proposal, and addressed and mailed the letter to appellee. Said acceptance was, in substance, as follows: Please ship us one minimum car of arsenic $2.95 f. o. b. New York, your quotation of October 31. On November 4, 1905, appellee received said acceptance, acknowledged it, and accepted it in accordance with its letter of October 31. It is also shown that appellee wholly failed, neglected and refused, and still refuses, to deliver to appellant the goods so purchased; that the goods so sold and purchased were at no time shipped from Europe to appellee or on appellee's account, from which it could deliver the goods so ordered by appellant; that appellee's failure of performance of its said contract was not caused by any accident or peril at sea whereby said goods were lost or jettisoned, but such failure in the first and second paragraphs is stated to have been caused by the failure of appellee's seller, in Europe, to ship the goods so sold to appellant by appellee.

The third paragraph contains all the facts found in each of the other paragraphs, differing only in stating the breach of the contract in suit. In this paragraph it is shown that

no arsenic, such as was contracted for by appellant, was ever shipped to, or for the account of, appellee from Europe to New York, out of which it could have performed its contract with appellant; that at the time appellee made the aforesaid contract with appellant it had not engaged or contracted with an European seller, nor did it thereafter engage from any such seller for shipment from any port in Europe to the city of New York, early in December or at any other time, refined powdered white arsenic, and that appellant did not know this fact, but believed and acted under the belief and relied upon the representation made by appellee that it, at the time of making the contract, had engaged the arsenic for shipment. Other facts are stated and damages alleged.

It is first argued that appellant's claim is not a proper matter of set-off, because it arises from a violation of duty or contract, and, therefore, is not within the statute.

It has been held that a set-off is authorized when mutuality exists between conflicting claims of plaintiff and defendant, which arise out of debt, duty or contract, in an action for a money demand upon contract. *Schnell* v. *Schnell* (1907), 39 Ind. App. 556. It is immaterial that the damages are unliquidated, and arise out of a distinct and separate cause of action. *Halfpenny* v. *Bell* (1876), 82 Pa. St. 128; *Axford* v. *Hubbell* (1880), 24 Kan. 444; *Wheelock* v. *Pacific, etc., Gas Co.* (1876), 51 Cal. 223. While the point was not decided, the court in *Slockton* v. *Graves* (1858), 10 Ind. 294, after referring to the statute of set-off, said: "It would seem, then, that where a party was sued touching the subject-matter of a contract, he might set up, by way of counterclaim in such suit, any demand he might have for unliquidated damages, growing out of such contract; while if not sued on that contract, but some other, then he might set up by way of set-off, his claim for damages growing out of the former contract, in the suit upon the second."

It would seem to us not improper to allow appellant's proposed set-off, on the theory that it is within the statute evidently enacted for the purpose of avoiding circuity of actions. But as that question does not arise on exceptions to the ruling of the court in sustaining the demurrer for want of facts to each paragraph of set-off (*Hawlett* v. *Dilts* [1892], 4 Ind. App. 23; *Boil* v. *Simms* [1877], 60 Ind. 162; *Kennedy* v. *Richardson* [1880], 70 Ind. 524), we pass it without positively deciding it.

The real question presented relates to the sufficiency of each paragraph, challenged by a demurrer for want of facts.

It has been held that an answer of set-off as a question of pleading is not, strictly speaking, a defense, but is regarded as a cross-action, and must state facts sufficient to stand alone. *Blount* v. *Rick, supra; Johnson* v. *Tyler* (1891), 1 Ind. App. 387; *Lupton* v. *Taylor* (1907), 39 Ind. App. 412. It is clear that appellee's proposal was conditioned upon prompt acceptance, and was subject to the arrival of the goods; but it was also expressly stated that the price quoted was for "1 C. L. [meaning one carload] refined powdered white arsenic from a lot we have engaged for November shipment from Europe to New York."

In construing a written instrument—the evidence of a contract—the court, among other things, will look to all the language used, and assume that it embodies and expresses the intention of the parties, and defines all the conditions. "The court is not at liberty, either to disregard words used by the parties, descriptive of the subject-matter, or of any material incident, or to insert words which the parties have not made use of." *Harrison* v. *Fortlage* (1896), 161 U. S. 57, 63, 16 Sup. Ct. 488, 40 L. Ed. 616.

It must also be kept in mind that there is no contract unless the parties thereto assent to the same thing in the same sense. In this case, each paragraph of set-off shows a prop-

osition on the part of appellee to sell appellant certain goods "engaged for November shipment," the time of shipment forming part of the description of the goods. This proposition was met by an acceptance which corresponded with it entirely. Appellee refused to furnish the goods, and, standing on the contract, says that no breach occurred, because no goods arrived, the arrival of the goods being a condition precedent to any liability for the performance of the contract.

It is, no doubt, the law that contracts for the sale and purchase of goods, upon condition of their arrival by a certain ship, named, do not import a warranty that the goods will arrive. 1 Beach, Contracts §98.

The case of *Hale* v. *Rawson* (1858), 4 C. B. (N. S.) *85, grew out of a contract for the sale and purchase of tallow to be delivered by defendants to plaintiffs on the safe arrival of a certain vessel called the Countess of Elgin, then alleged to be on her passage from Calcutta to London. The ship arrived at London, but without the tallow on board. Held, that the only contingency in the contract was the arrival of the vessel named, and that defendants should not be excused from the performance of their contract.

In the case of *Gorrissen* v. *Perrin* (1857), 2 C. B. (N. S.) *681, the contract was for the sale and purchase of certain goods, "then on passage from Singapore, and expected to arrive at London" on certain named vessels, at certain prices then agreed upon. If either or both of the vessels carrying said goods should be lost, the agreement was to be void for the quantity so lost. In that case it was contended that the seller's obligation was conditional on the double event: "First, the arrival of the ship, and secondly, of the goods' being on board." The court's attention was called to several cases wherein the words "to arrive," or "expected to arrive," and like expressions, were considered, and it was said: "We are, however, of opinion that the present case is plainly distinguishable from those referred

to, by the statement that the goods were on board at the time the contract was entered into. We are of opinion that this statement amounts to a warranty; and although, if circumstances had subsequently occurred whereby the arrival of the goods had been prevented, the defendants might have been protected by the words 'expected to arrive,' we think they cannot resort to them to get rid of the positive assurance that the goods were then on their passage; on the faith of which, possibly, the purchaser may have entered into the contract to buy.''

The case of *Abe Stein Co.* v. *Robertson* (1901), 167 N. Y. 101, 60 N. E. 329, was an action to recover damages for the breach of a contract evidenced by a bought and sold note. The subject of the contract—goatskins—was ''expected to arrive from China. Goods to be shipped immediately on steamer to New York. No arrival, no sale.'' The goods were shipped by defendant from China by steamer to New York, and tendered to plaintiff. In quality they did not meet the requirements of the contract. Defendant insisted ''that the contract was conditional, not only as to its performance, but as to its effect, and that the provisions 'expected to arrive from China,' and 'no arrival, no sale,' were, in effect, an agreement that if the goods referred to in the contract, when they arrived, were not of the quality prescribed, the contract was at an end and the plaintiff could recover nothing for its breach.'' The court said: ''Doubtless the effect of those provisions was to relieve the defendant from any breach of the contract occasioned by the nonarrival of the goods, *provided it was not caused by fault of the seller.*'' (Our italics.) The court further said: ''But the principle that if the goods specified and described in the contract do not arrive, a condition which terminates the contract exists and the seller is not liable, has no application where the contract contains either a warranty that the shipment has been made, or an express agreement upon the

658    APPELLATE COURT OF INDIANA,

Penn-American, etc., Co. v. Harshaw, etc., Co.—46 Ind. App. 645.

part of the seller to make shipment of goods described. In the latter case [*Anderson* v. *Read* (1887), 106 N. Y. 333, 13 N. E. 292] the contract is an existing and continuing one, and its provisions as to the quality of the goods are not only conditions precedent to any obligation upon the part of the buyer to accept them, but where the seller fails to ship goods of the quality required, the buyer is also entitled · to such damages as he sustains by reason of such failure (*Clark* v. *Fey* [1890], 121 N. Y. 470, 24 N. E. 703; *Eppens, etc., Co.* v. *Littlejohn* [1900], 164 N. Y. 187, 58 N. E. 19, 52 L. R. A. 811). In these cases it was held that where a seller had agreed to ship goods, and their failure to arrive resulted from his omission to ship them, the failure was caused by the fault of the seller and did not operate to relieve him from his contract." It was also held "that the terms, 'expected to arrive,' and 'no arrival, no sale,' apply only to the risks or perils of navigation or transportation."

The contract before us was one where the appellee contracted to sell and appellant to purchase a named quantity of arsenic from a lot appellee had "engaged for November shipment from Europe to New York, providing for arrival there early in December." We cannot say that this provision was inadvisedly incorporated into the contract. It was a part of appellee's proposal, and the pleaded facts show that appellant in accepting it relied on that provision. An accepted proposal to sell a certain quantity of arsenic "from a lot we have engaged for November shipment," clearly imports a sale of goods then engaged for shipment, and the phrase "subject to arrival" does not impair the express agreement on the part of the seller that the goods were then engaged for shipment at the time named in the proposal.

The facts stated in the third paragraph of set-off show that appellee, at no time, ever engaged the goods for shipment; that they were never shipped or offered for shipment to, or for the account of, appellee, and by reason of these facts alone the goods so purchased by appellant did not ar-

rive at New York. The phrase "subject to arrival" refers to the goods which were the subject of the contract, and implies a condition that unless the goods so sold do arrive at their destination the seller was not responsible for nondelivery and the purchaser is not liable to the seller for the price, but these words cannot be used as a means of escaping liability, where the true cause for the nonarrival of the goods is shown to be the fault of the party claiming the benefit of such condition.

In, the first and second paragraphs of set-off appellee's breach is said to have been caused by the European seller's violation of his contract with appellee. No fault for that breach is charged against appellee. No fault is laid at the door of appellee for the failure of the goods to arrive at New York. If it can be said that appellee's proposal was unconditional, except for the loss of the goods at sea, the failure to ship the goods would constitute a breach of the contract, for which appellee would be liable to appellant for any damages occasioned thereby. And the fact that the breach was caused by a third person would be no defense. But, looking to the situation of the parties at the time the contract was made, we cannot close our eyes to the fact that appellee's proposal informed appellant as to the nature of its title to the goods it proposed to sell. Appellee's proposal clearly referred to goods it had engaged for shipment from Europe to New York, and not to goods then under its absolute control. The goods being merely "engaged" or contracted for shipment, it seems plain that the contingency of the European seller's keeping his agreement with appellee was open and apparent to both parties, and that they must have entered into the contract with such contingency in view. It was a matter about which they had a right to agree. It was certain that the failure of the third person to keep his agreement and ship the goods would prevent the arrival of the particular lot appellee proposed to sell. These facts appearing, it would not be unreasonable to assume, as

against the pleader, that the parties intended that the phrase "subject to arrival" should apply to the contingency mentioned, and which did actually happen to prevent the arrival of the goods at New York.

The demurrers to the first and second paragraphs of set-off were properly sustained, and the demurrer to the third paragraph should have been overruled.

For the reasons stated, the judgment of the trial court is reversed, a new trial is ordered, and leave granted to each of the parties to amend its pleadings if it so desires.